523 A.2d 1205

Betty S. Gillespie, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 23, 1987, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Michael Goldberg,* for petitioner.

*Michael D. Alsher,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, April 10, 1987:

Betty S. Gillespie (petitioner) petitions for review of the order of the Unemployment Compensation Board of Review (Board) summarily affirming a referee's decision that she was discharged for willful misconduct in connection with her work and, therefore, that she is ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

In her findings of fact numbers one through five and number twelve, the referee found, and the petitioner does not dispute, that the petitioner was discharged for accumulating sixty-three points under the Kerr Glass (employer) employee absenteeism and tardiness policy (policy). These findings further relate that the policy operates on a point system and, starting with an initial incident of absenteeism, tardiness or early departure

from work, the system creates a twelve month period during which the accumulation of more than fifty points mandates discharge. Points are assessed for each incident of the above-referenced conduct without regard to any possible justification for the employee's conduct and extra points are assessed if the employee fails to notify the employer in accordance with the policy.[1]

As noted, during the relevant period, May 14, 1984 through April 19, 1985, the petitioner accumulated sixty-three points under the policy. From May 14, 1984 through April 5, 1985, the petitioner's total stood at thirteen points. Beginning with April 9, 1985,[2] the petitioner was absent from work until April 22, 1985.

The remainder of the referee's findings are as follows:

    6.  Claimant alleges her absences were due to illness.

    7.  Claimant was absent on April 9, April 10, April 11 and April 12, 1985, properly called in and was given 4 points in accordance with the policy.

---

[1] Although not the subject of an express finding of fact, the witness for the employer, a Mr. London, the Plant Industrial Relations and Personnel Manager at the time of the events here concerned, testified as to the specifics of the point system as follows:

> We have a point system. It is a *no-fault* type policy. You receive points for different types of absences, *illness* or lateness or leaving work early. If you exceed 50 points within a 12 month period, you are terminated.
> . . . .
> If you call in, for example, and *say you are sick*, if you call in within the prescribed time limit, *you would receive 4 points*. If you call in late, you would get 5 points. If you are AWOL, you receive 12 points. . . .

[2] The findings are silent as to April 8, 1985, a Monday, and whether or not the petitioner was scheduled to work that day.

8.  Claimant was absent allegedly due to illness April 9, 1985, through April 12, 1985. Claimant visited a doctor first on April 12, 1985, and was given medication.

9.  Claimant visited her doctor again on April 19, 1985, allegedly because she was not cured and alleges she was told she could return to work on April 22, 1985.

10.  Claimant received word that her father was to be released from the Coatesville Hospital on April 15, 1985, and she decided to bring him to her home.

11.  The Claimant alleges her father was having severe health problems which required her almost continuous assistance.

12.  Claimant did not report for work on April 15, 1985, and did not call the employer to report off. In accordance with the employer's policy, she was given 12 absentee points.

13.  Claimant was absent April 16, April 17, April 18 and April 19, 1985.

14.  The employer's records show claimant did not call in on April 16 and was assessed 12 points, did call late on April 17 and was assessed 5 points, did not call on April 18 and was assessed 12 points, called in on April 19 late and was assessed 5 points. This brought claimant's total number of points to 63 in less than one year.

15.  Claimant does not agree with the employer's dates of calls ·for the period April 15, 1985, through April 19, 1985, but states she made only one proper call and one late call during that week. Claimant indicates she may have had the wrong dates for her calls and agrees the points assessed for that week were proper.

16. The claimant did not call off on April 15, 1985, because her mind was on her father.

17. Claimant called in late on April 17, 1985, because she had admitted her father to the St. Joseph Hospital.

18. Claimant did not call in on April 18 or April 19 even though she had been reminded by the plant nurse on April 16 or April 17 that she would be required to call in daily unless she presented medical information to the employer.

19. Claimant did not present medical evidence to the employer until she returned to work on April 22, 1985.

And, after reviewing the principles governing Section 402(e) determinations, the referee reasoned that:

Claimant was discharged because she had exceeded the number of points permitted under the employer's attendance policy. Claimant was aware of the policy. Claimant was excessively absent and after carefully reviewing the entire record, the Referee cannot find that she had good reasons for all her absences and even if she did have good reasons to be absent, a large number of the points assessed to the claimant was due to her failure to call in or to call in properly. Claimant did not have good reasons for failing to report off and/or to properly report off. The Courts have repeatedly held that failure to properly report absences constitutes wilful misconduct under Section 402(e) of the Law. Accordingly, when claimant was discharged, she became ineligible for benefits under the aforementioned Section of Law.

Clearly, then, the referee, and, by extension, the Board, did not consider whether or not each instance of absenteeism from May 14, 1984 through April 22, 1985

was justified, but merely accepted the accumulation of the necessary number of points, in and of itself, as conduct which constitutes willful misconduct. On review, the petitioner contends that in so doing the referee and the Board erred as a matter of law.[3] We agree.

> It has long been settled . . . that *absenteeism by itself does not constitute willful misconduct. . . .* An employer may be justified in discharging an employee for excessive absenteeism; however, *unless the absences are unjustified or not properly reported according to the employer's rules,* the employee's absenteeism does not amount to a disregard of the standards of behavior an employer has the right to expect of an employee.

*Welded Tube Company of America v. Unemployment Compensation Board of Review,* 43 Pa. Commonwealth Ct. 231, 233-34, 401 A.2d 1383, 1385 (1979) (emphasis added) (citations omitted). Accordingly, we must reject the employer's "no-fault" standard and the superficial analysis of the unemployment compensation authorities. Consequently, *any absences due to illness cannot be utilized against the petitioner for the purpose of determining whether or not she was discharged for willful misconduct. Id.*

Our inquiry cannot end at this point, however, inasmuch as the referee found, on substantial record evidence, that the petitioner, at times, failed to give notice of her absences according to the policy. And, while such conduct would ordinarily constitute willful misconduct, *id.,* we have held that, where, as here, an employer

---

[3] Pursuant to Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, we must affirm a Board adjudication unless a party's constitutional rights were violated, or there was an error of law, or necessary findings of fact are not supported by substantial evidence. *Wurster v. Unemployment Compensation Board of Review,* 102 Pa. Commonwealth Ct. 417, 518 A.2d 350 (1986).

erects a specific disciplinary system which tolerates certain conduct, which ordinarily would constitute willful misconduct, that conduct cannot be held to rise to the level of willful misconduct until the specified number of repetitions has been met. Under such circumstances, the promulgation of such specific rules puts employees on notice that the employer will not consider such conduct to be adverse to its interest until the requisite number of violations has been committed. *Unemployment Compensation Board of Review v. Schmid,* 20 Pa. Commonwealth Ct. 286, 341 A.2d 553 (1975).

Applied to the matter *sub judice,* the foregoing analysis leads us to conclude that, unless the petitioner's points due to improper reporting exceeded the total for discharge, that conduct, in and of itself, cannot, under the present circumstances, be held to constitute willful misconduct. *Id.*

Our review of the referee's findings, however, convinces us that we are unable to apply the foregoing analysis on the basis of those findings. Findings numbers six, eight and nine state that the petitioner *alleged* that she was ill and finding number eleven states that she *alleged* a need to care for her father due to his health, yet there is no finding which expressly or inferentially resolves these allegations. These findings, therefore, provide no "facts" for our review. Moreover, the referee failed to address the reason for the absence of April 9, 1985, unless her ambiguous finding number six was meant to relate to all absences other than those due to the petitioner's alleged need to care for her father. If the petitioner's various absences were due to her illness, *Welded Tube,* or her need to care for a severely ill family member, *Maldonado v. Unemployment Compensation Board of Review,* 94 Pa. Commonwealth Ct. 149, 503 A.2d 95 (1986), such absences simply cannot support a conclusion of willful misconduct.

Accordingly, we must remand this matter to the Board for the necessary factual findings, *Monroe G. Koggan Associates, Inc. v. Unemployment Compensation Board of Review*, 80 Pa. Commonwealth Ct. 626, 472 A.2d 277 (1984), and a reconsideration of whether or not the petitioner's failures to comply with the policy resulted in sufficient points, excluding points assessed for justified absences, to exceed the discharge limit and constitute willful misconduct.

ORDER

AND NOW, this 10th day of April, 1987, the order of the Unemployment Compensation Board of Review in the above-captioned matter is vacated and the record is remanded to the Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.