126 Pa. Commonwealth Ct. 94 (1989)
558 A.2d 623
PMA REINSURANCE CORPORATION, Petitioner,
v.
COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.
Commonwealth Court of Pennsylvania.
Submitted on Briefs March 3, 1989.
Decided May 17, 1989.
*97 Jody P. Mahon, Kenneth R. Wilson, Philadelphia, Michael Goldberg, Central Pennsylvania Legal Services, Lancaster, for petitioner.
Clifford F. Blaze, Deputy Chief Counsel, John E. Herzog, Asst. Counsel, Harrisburg, for respondent.
Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.
McGINLEY, Judge.
PMA Reinsurance Corporation (Employer) appeals an order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision denying benefits to Cindy L. Smith (Claimant) pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.
Claimant was employed as a programmer analyst from January 7, 1987, until her last day of work on October 15, 1987. During Claimant's nine months of employment, the Employer documented that Claimant had taken twenty-two and a half days of sick time and that "[s]ince July 1st Cindy has been late at least 43 times . . . and has come in between 10:00 and 11:00 at least 75% of the time"[2] (Employer's Memo (Memo), R. Item No. 3, Reproduced Record (RR) at 3a). Employer also documented that Claimant left work early without her supervisor's permission and her tardiness prevented her from completing her assigned responsibilities as required in her job description (Memo, RR at 3a). Employer scheduled and held three meetings with Claimant concerning her absenteeism and tardiness.[3] Cunningham testified that Claimant made some improvement in reporting to work after the initial meeting of August 31, 1987 (N.T. at 6). However, Cunningham testified that Claimant *98 still continued to report to work late or to be absent despite the two additional meetings (N.T. at 6-7). Claimant reported to work at 9:15 a.m. on October 15, 1987, and Employer discharged Claimant.
The Referee affirmed the Office of Employment Security's denial of compensation benefits to Claimant pursuant to Section 402(e) of the Law. Claimant appealed to the Board, and the Board remanded to the referee for a hearing to establish additional testimony regarding the merits of the case. After the hearing[4] the Board made the following relevant findings of fact:
3. The employer had written policies and procedures regarding proper attendance, and were applicable to claimant.
4. The employer policies included a progressive accumulated point-system for applying disciplinary actions for tardiness and absenteeism.
5. Over a twelve-month period, the employer would assign points for tardinesses and absences. As an employee's point accumulated, the appropriate disciplinary action would be taken. The first action would be verbal warning, second a written warning, third a probationary period, and then termination.
6. Claimant was aware of the employer's policy.
7. Claimant received verbal warnings when counseled on August 31 and October 5, 1987 regarding her reporting late to work.
8. Claimant did not receive a written warning or a probationary period prior to termination.
The Board's Findings of Fact and Conclusions of Law, August 14, 1988 at p. 1. The Board found that there was a conflict in the testimony and resolved it in favor of Claimant and concluded that the Employer did not properly apply its outlined disciplinary procedure.
*99 On appeal the Employer argues that: 1) the Board erred in not finding that Claimant's absenteeism and tardiness constituted willful misconduct per se; 2) the Board erred in not concluding that the Employer properly applied the disciplinary procedures in its employee handbook; and 3) the Claimant is precluded from demanding any contractual protection under the employee handbook by the employment-at-will rule.
Initially, we note that our scope of review is limited to whether an error of law was committed, constitutional rights were violated, or whether substantial evidence supports the findings of facts. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Kirkwood v. Unemployment Compensation Board of Review, 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).
The question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court. Fritz v. Unemployment Compensation Board of Review, 66 Pa. Commonwealth Ct. 492, 446 A.2d 330 (1982). Willful misconduct is defined as conduct that represents a wanton and willful disregard of an employer's interest, deliberate violation of rules, disregard of standards of behavior which an employer can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or employee's duties and obligations. Frick v. Unemployment Compensation Board of Review, 31 Pa. Commonwealth Ct. 198, 375 A.2d 879 (1977). We recognize that chronic tardiness particularly after a warning and unjustified absenteeism constitute willful misconduct. Conibear v. Unemployment Compensation Board of Review, 76 Pa.Commonwealth Ct. 264, 463 A.2d 1231 (1983); Welded Tube Company of America v. Unemployment Compensation Board of Review, 43 Pa. Commonwealth Ct. 231, 401 A.2d 1383 (1979). However, where the absences are not properly recorded according to the employer's rules, the employee's absenteeism does not amount to a disregard of the standards of behavior an *100 employer has the right to expect of an employee. Gillespie v. Unemployment Compensation Board of Review, 105 Pa. Commonwealth Ct. 243, 523 A.2d 1205 (1987); Welded Tube. In the present case, the Employer had a progressive disciplinary policy.[5] Employer discharged Claimant because of her attendance record without adhering to its own progressive disciplinary system. Only two of the four steps, counseling and termination (N.T. at 13), were followed by the Employer. Employer never documented any counseling or placed Claimant on probation (N.T. at 10, 13). Where an Employer promulgates a specific disciplinary system, it is incumbent upon Employer to follow that system. The promulgation of specific rules puts employees on notice that the employer will not consider such conduct to be adverse to its interest until the requisite number of violations have been committed. Gillespie, 105 Pa. Commonwealth Ct. at 249, 523 A.2d at 1207. The Employer failed to follow its policy in discharging Claimant and consequently failed to establish that the discharge was for willful misconduct related to Claimant's work.
Employer next argues that the Claimant was an "exempt" employee and that the progressive disciplinary system outlined in written policies and procedures did not apply to Claimant. We disagree.
*101 The Employee handbook states: "Since every position is vital to the overall operation of the company you are expected . . . ." (R. Item No. 8, Claimant's Exhibit 1 at RR 27a). The employee handbook is silent on any alleged distinction between exempt and non-exempt employees for purposes of applying a progressive disciplinary procedure. The Employer contends that there is an unwritten company practice, known to Claimant and fellow employees, which distinguishes between exempt and non-exempt employees. This contention is contradicted by Claimant's testimony.[6] Questions of credibility and evidentiary weight are for the Board and in the exercise of its discretion found the Claimant's testimony to be more credible than that of the Employer's witness. Slayton v. Unemployment Compensation Board of Review, 58 Pa.Commonwealth Ct. 120, 427 A.2d 322 (1981). The Board properly concluded that the Employer's attendance policy and disciplinary procedure applied to the Claimant.
Finally, the Employer argues that, since an employment relationship is generally "at will" in Pennsylvania, it did not have to follow its progressive disciplinary procedure in discharging the Claimant. We disagree.
While the Employer could discharge Claimant for a number of reasons, it must do so in accordance with its own *102 rules if Claimant is to be ineligible for unemployment compensation benefits. Gillespie.
Accordingly, we affirm the decision of the Board.

ORDER
NOW, May 17, 1989, the order of the Unemployment Compensation Board of Review, dated August 19, 1988, at B-267992 is affirmed.
NOTES
[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).
[2] Employer witness John Cunningham (Cunningham) testified that Claimant was required to be at work at 8:30 a.m. Notes of Testimony, December 16, 1987, (N.T.) at 4.
[3] The meetings were held on August 31, 1987, September 14, 1987, and October 5, 1987. N.T. at 6-7.
[4] The Employer presented telephone testimony at the remand hearing which was objected to by Claimant. The referee did not rule on the objection, but did allow the testimony. Notes of Testimony, April 20, 1988, at 1-9, 17. However, the Board's decision is supported by testimony elicited at the first hearing.
[5] The Employer's policy guidelines in relevant part are:

Occurrences
Each time an absence occurs, it is measured on a point basis. . . . Lateness and Early Departure
Lateness within first 15 minutes of work or returning from lunch is recorded as ½ a point.
Lateness after the first 15 minutes of the work day or returning from lunch, or early departure is recorded as one point.
. . . .
Attendance Review and Disciplinary Action Once point accumulations reach certain levels, following steps taken place:
Attendance Review
7-11 points: Counseling
12-15 points: Documented Counseling
Disciplinary Action
16-19 points: Probation
20 or more points: Termination Review Process
R. Item No. 8, Claimant's Exhibit 1, RR at 27a.
[6] George Litterer (paralegal) to Claimant:

Q: Miss Smith did you believe that the contents of the employee handbook applied to you?
A: Yes, that's the one I was given when I started there, to follow.
Q: And have, did you specifically believe that the attendance report inside that handbook applied to you?
A: Yes I do.
Q: Were you ever provided with a documented disciplinary hearing or were you ever placed on probation in accordance with the written policy in the handbook?
A: No.
Q: If you would of known that your job was in jeopardy as a result of your coming in late, would you have continued to come in late?
A: No.
(N.T. at 12, 13.)