IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dominique Mitchell, : 
             Petitioner : 
                                      :    No. 2199 C.D. 2014
              v. : 
                                        :    Submitted: May 1, 2015
Unemployment Compensation : 
Board of Review, : 
             Respondent : 

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED: August 4, 2015

          Dominique Mitchell (Claimant), proceeding *pro se*, petitions for review of the November 14, 2014 order of the Unemployment Compensation Board of Review (Board) affirming a referee's determination that she is ineligible for benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

          From July 25, 2011, to July 7, 2014, Claimant was employed as a full-time Licensed Practical Nurse with Maplewood Nursing and Rehabilitation (Employer). After conducting a quality assurance review, Employer discovered that

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) states that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.

on July 4, 2014, Claimant did not provide the required, prescribed medication to two residents. Employer suspended Claimant on July 7, 2014, investigated the incidents, and discharged Claimant on July 16, 2014, for violating its medication administration policy and falsifying records. (Findings of Fact Nos. 20-21, 23, 25.) The local service center determined that Claimant was eligible for benefits, and Employer appealed. The referee convened a hearing, at which Fran Dwyer, Employer's Nursing Home Administrator, and Claimant testified.

Dwyer testified to the various policies that Employer maintains pertaining to medication storage and administration and submitted documentation reflecting these polices. Dwyer further testified to Employer's progressive disciplinary policy regarding medication administration, Claimant's previous violations in administering medication, and her final, written warning. Dwyer explained that Employer suspended, and ultimately discharged, Claimant as a result of incidents occurring on July 4, 2014; specifically, Claimant failed to follow the procedure for obtaining prescription medication for two residents and documented that prescription medication was given to both residents when there was evidence that the medications were not available. Dwyer stated that Claimant admitted that she did not give the residents their prescribed medication, claimed that it was a mistake, and completed an omission/inaccurate form five to seven days after she was suspended. Dwyer said that there was nothing in the medication chart to indicate that Claimant administered a substitute – or PRN or as needed – medication to one of the residents in lieu of the prescribed medication. (N.T. at 7-8, 12-13, 17, 21, 25, 39.)

Claimant testified that the charge nurse made an error on a prescription, listing the resident's incorrect name, and that she received permission from her supervisor to administer a PRN medication to one of the residents. Claimant also

2

testified that she did not give the other resident his prescribed medication, realized the mistake, and completed an omission/inaccurate form to acknowledge and correct the error, leaving the form on the unit manager's desk the morning of July 5, 2014. (Notes of Testimony (N.T.) at 29-30, 32-33, 37.)

In light of the evidence presented, the referee made the following relevant findings of fact:

> 2. Employer maintains a written Medication Administration Policy to ensure that medications are administered in accordance with State and Federal Regulations . . . .
>
> 3. Employer also provides medication administration training to new staff upon initial hire, on a routine basis, and following any medication administration errors or serious violations.
>
> 4. During said training, Employer notifies staff that they are to record all medication administered on the medication administration record by initialing it and that staff are not to initial the medication administration record if medication was not administered.
>
> 5. Employees who become aware of a medication administration or documentation error may complete a documentation omission/inaccurate entry form which they are to provide to the unit manager.
>
> \*    \*    \*
>
> 10. In cases where a medication is unavailable and medication is needed to be administered to the patient, such as a pain medication, Employer does provide a PRN medication, or [an] as needed medication, which may in cases of emergency be provided in lieu of the standard medication.
>
> 11. Employer provides training to staff that all attempts should be made to obtain the standard medication

3

prescribed to the patient but if those efforts are unsuccessful the PRN medication could be administered but had to be clearly indicated on the medication administration record.

12. Claimant was, or should have been, aware of the above policies and procedures.

13. Employer generally follows a progressive discipline policy for violation of [its] medication administration policies in the form of a verbal warning, written warning, final written warning, suspension pending an investigation and termination of employment.

14. Claimant was provided an educational consult and follow-up training regarding medication administration on November 1, 2012, and November 2, 2012, which Employer considered an oral warning.

15. On January 6, 2014, Employer issued Claimant a first written warning for a medication administration violation.

16. On April 30, 2014, Employer issued Claimant a final warning for a medication administration violation.

17. On July 4, 2014, Claimant was working a double shift from 3:00 p.m. until 7:00 a.m. the following day.

18. Claimant completed a medication administration record for two separate residents for July 4, 2014, which indicated Claimant had administered prescription medications which she had not.

19. For at least one of the patients on the date in question, Claimant admitted to not obtaining the prescription order from the physician.

\* \* \*

22. Upon questioning by Employer, Claimant admitted to not giving the prescribed medications to the residents which she had recorded as being administered due to a mistake.

\* \* \*

4

24. Approximately five to seven days after her suspension, Claimant provided a documentation omission/inaccurate entry form to Employer reporting and showing that the Claimant had recorded an error regarding one of the clients in question on July 4, 2014.

(Findings of Fact Nos. 2-5, 10-19, 22, and 24.)

Based upon these facts, the referee concluded that Claimant engaged in willful misconduct, determining, among other things, that Employer presented sufficient competent testimony and evidence to establish the existence of its medication administration policies; Claimant had been progressively warned, disciplined, and terminated in accordance with Employer's disciplinary policies; and the undisputed evidence established that Claimant completed a medication administration record indicating that she had administered standard prescribed medications to two residents when in fact she had not. (Referee's decision at 3.)

After determining that Employer demonstrated that it discharged Claimant for willful misconduct connected with her work, the referee proceeded to analyze whether Claimant had met her burden of establishing good cause for her actions. (*Id.*)

In this regard, the referee rejected as not credible Claimant's contention that a resident's name on a prescription was incorrect and that she was authorized to administer a PRN medication in place of the standard prescription. In doing so, the referee noted that Claimant's assertion was supported only by her "own self-serving testimony" and found, as a matter of fact, that Claimant did not indicate on the medication administration record that she had administered a PRN medication in place of a standard prescription, as required by Employer's policies. (*Id.*)

Furthermore, the referee rejected as not credible Claimant's contention that she made a mistake in indicating that she had administered prescribed medication

5

to one resident, as reflected by the fact that she completed an omission/inaccurate entry form to correct the error. The referee noted that Claimant did not complete this form until after she was suspended and stated that Claimant's history of medication administration violations further render her testimony not credible. (*Id.*)

For these reasons, the referee concluded that Claimant failed to establish good cause for her actions, reversed the local service center, and determined that Claimant was ineligible for benefits pursuant to section 402(e) of the Law.

Claimant appealed to the Board, which, by decision dated November 14, 2014, affirmed the referee's decision, adopting and incorporating the referee's findings and conclusions. The Board also added that it specifically found Claimant's allegation that she made a mistake was not credible; instead, the Board found that Claimant recorded the prescribed medications as being administered while knowing that they were not. (Board's decision at 1.)

Claimant now appeals to this Court,[2] argument that the Board erred in determining that her actions constituted willful misconduct. Claimant contends that she established good cause for her actions because she administered a PRN medication to one resident as authorized and ordered by her supervisor; completed an omission/inaccurate form in a timely fashion and submitted it to the proper personnel; and mistakenly pressed the incorrect computer key code for "medication administered." Claimant also asserts that Dwyer was not present during Claimant's suspension meeting or any of the incidents that comprise the basis for her

---

[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Shrum v. Unemployment Compensation Board of Review*, 690 A.2d 796, 799 n.3 (Pa. Cmwlth. 1997).

termination, thus implying that Dwyer's testimony should not have been accepted as credible.

An employer contesting a claimant's right to benefits pursuant to section 402(e) bears the burden of proving willful misconduct. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). Where an employer bases a claim of willful misconduct on the violation of a work rule, the employer must prove: (1) the existence of the work rule, (2) the reasonableness of the rule, (3) the claimant's awareness of the rule, and (4) that the employee violated the rule. *Bell Socialization Services, Inc. v. Unemployment Compensation Board of Review*, 74 A.3d 1146, 1147 (Pa. Cmwlth. 2013).[3]

If the employer satisfies its initial burden, which is undisputed in this case, the burden then shifts to the employee to demonstrate good cause for her actions. *Lausch v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). A claimant establishes good cause by demonstrating that her actions were justified or reasonable under the circumstances, *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 (Pa. Cmwlth. 2009), and the issue of whether good cause exists is a factual one for the Board to resolve. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1164 (Pa.

---

[3] Claimant does not contend on appeal that Employer failed to establish willful misconduct. Even if she did, we would conclude that such an argument lacks merit. Upon our review of the record, the referee's findings and determination that Claimant was discharged in accordance with Employer's progressive disciplinary policy, and, therefore, committed willful misconduct, are supported by substantial evidence and free from legal error. (N.T. at 12-13, 25.) *See PAM Reinsurance Corp. v. Unemployment Compensation Board of Review*, 558 A.2d 623, 625-26 (Pa. Cmwlth. 1989) (stating that a claimant will be ineligible for benefits where an employer promulgates a specific disciplinary system and follows that system in discharging the claimant). *See also Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647-48 (Pa. Cmwlth. 2012).

Cmwlth. 2013). In unemployment compensation proceedings, the Board is the ultimate fact-finder, empowered to determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted testimony. *Id.*; *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

Here, Claimant relies on her preferred version of the facts and disregards the findings made by the Board. The Board adopted the referee's findings and specifically found that Claimant's testimony was not credible and was insufficient to establish good cause. Essentially, Claimant is arguing that the Board should have believed her evidence and it did not. However, "[q]uestions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007). Because the Board found that Claimant's testimony was not credible and that Claimant failed to carry her burden of establishing good cause, this Court has no legal basis upon which to disturb the Board's decision. *See Ellis*, 59 A.3d at 1164 (concluding that claimant's argument that her testimony proved good cause lacked merit where the Board found that the claimant's testimony was not credible and was insufficient to establish good cause).

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dominique Mitchell, : 
        Petitioner : 
     :   No. 2199 C.D. 2014
    v. : 
     : 
Unemployment Compensation : 
Board of Review, : 
        Respondent : 

## ***ORDER***

AND NOW, this 4th day of August, 2015, the November 14, 2014 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge