IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda M. English,                                    :
                 Petitioner            :
                                      :   No.  155 C.D. 2016
          v.                                          :
                                      :   Submitted:  August 26, 2016
Unemployment Compensation            :
Board of Review,                                     :
                  Respondent          :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED:  December 7, 2016


        Linda M. English (Claimant) petitions for review of the January 5, 2016 order of the Unemployment Compensation Board of Review (Board), affirming a referee's determination that she is ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  Upon review, we affirm.

        Claimant was employed full-time with Aria Health (Employer) as an Emergency Room Technician, from January 8, 2001, until the date of her discharge, August 14, 2015.  Claimant was aware of Employer's policies and procedures.  Employer maintains an Attendance Policy, which attributes "occurrences" to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with his work.  43 P.S. §802(e).

employees for attendance infractions. Pursuant to the Attendance Policy, an employee who is one to seven minutes late will receive a one-quarter occurrence; eight to 120 minutes late will receive a one-half occurrence; and more than two hours late will receive one occurrence. Furthermore, an employee who is absent for one day will receive one occurrence; absent for two consecutive days will receive one and one-half occurrences; and absent for three or more consecutive days will receive two occurrences. (Findings of Fact (F.F.) at 1-3, 5.) According to the Attendance Policy, all of an employee's use of sick and personal time is included as a chargeable occurrence unless the time is used as part of an approved Leave of Absence. (Reproduced Record (R.R.) at 139a.)

Employer uses "thresholds" of occurrences as guidelines to manage excessive absences or lateness, depending on the number of shifts and hours that an employee works, and the maximum threshold is five occurrences. (F.F. at 3.) The Attendance Policy states that when the threshold is exceeded, this "will result in implementation of the Performance Improvement and Progressive Corrective Intervention" and that "any previous occurrence(s) that occurred during the twelve-month period, measured backward from the date of the most recent occurrence, will be considered in the current attendance management review, unless individual circumstances dictate otherwise." (R.R. at 140a.) The Attendance Policy further provides: "The reliability of staff is an important factor in assuring high quality patient care. Frequent and/or unscheduled absences, lateness, and early departures place added workload pressures on co-workers and negatively affects the quality of patient care." (R.R. at 138a.)

Employer also has a Human Resources Policy and Procedural Manual (Manual), which in the "Policy" section states that "[t]here may be circumstances, in

[Employer's] sole discretion, in which immediate termination of employment is warranted." (R.R. at 131a.) Under the "Guidelines" section, the Manual states, in pertinent part:

> The guidelines below are intended as 'guidance' and are not all-inclusive. Steps may be added or passed-over depending on the individual circumstance and/or the employee's previous record. In reviewing the employee's record, any previous disciplinary actions occurring during the previous twelve months will be considered.

(R.R. at 132a.)

The Manual then contains a "Performance Improvement" section that contains different matrixes for different infractions of Employer's rules. This part of the Manual specifically states:

> The purpose of the matrix below is to promote fairness and consistent application of the discipline policy. The matrix is intended to be a guideline only and is neither all-inclusive nor binding in all circumstances; all surrounding facts and circumstances, including seriousness of the specific incident, the employee's past record, mitigation circumstances, and multiple infractions will be considered.

(R.R. at 133a.) The matrix for "excessive lateness and/or absenteeism" has four stages: coaching; initial warning; final warning; and discharge. *Id.*

On September 24, 2014, Employer issued Claimant a coaching discipline for incurring approximately twelve occurrences from December 18, 2013, to July 17, 2014. (R.R. at 130a; F.F. at 7.)

Thereafter, from August 26, 2014, to August 3, 2015, Claimant accumulated approximately ten occurrences for the following incidents:

> 8/26/14 (five minutes late)
> 8/29/14 (nineteen minutes late)

3

9/02/14 (one minute late)
9/05/14 (absent one day)
11/26/14 (one minute late)
11/29/14 (one minute late)
12/03/14 (two minutes late)
1/18/15 (one minute late)
1/21/015 (two minutes late)
1/27/15 – 1/30/15 (four days absent)
2/27/15 (one day absent)
3/02/15 – 3/03/15 (two days absent)
3/20/15 (1 minute late)
3/25/15 (fifteen minutes late)
4/05/15 (one minute late)
5/20/15 (five minutes late)
8/3/15 (two hours and five minutes late)

(F.F. at 6.)

On February 2, 2015, Employer issued Claimant an initial warning for excessive lateness and absenteeism. This warning told Claimant that Employer "will take into account [Claimant's] efforts to make a change in habits," but warned that "[a]dditional occurrences will lead to termination." (R.R. at 128a.)

On May 15, 2015, Employer issued Claimant a final warning, which did not concern Claimant's attendance. Particularly, this final warning was issued to Claimant because she took a patient's pants outside of the examination room while no staff was present, and the patient later complained that money was missing from his pant pockets. (F.F. at 8, R.R. at 76a.) The final warning stated that Claimant "will adhere to all policies and processes" and informed Claimant that "[a]dditional occurrences will lead to termination." (R.R. at 129a.)

On August 13, 2015, Employer reviewed the time records and noticed that Claimant was two hours and five minutes late for her shift on August 3, 2015. On September 4, 2015, Employer discharged Claimant for excessive lateness and/or absenteeism. (F.F. at 9-11.)

4

Claimant filed a claim for unemployment benefits, which the local service center denied, determining that she engaged in willful misconduct. Claimant appealed and the referee convened a hearing.

At the hearing, Claimant testified and Employer presented the testimony of its employee relation specialist, leave management coordinator, and emergency room nurse manager. In essence, these witnesses testified to the facts recited above.

By decision dated November 5, 2015, the referee concluded that Claimant engaged in willful misconduct. In so determining, the referee dismissed as not credible the testimony of Employer's witness that Employer has discretion to follow progressive discipline and that the final warning did not have to relate to Claimant's time and attendance issues. Consequently, the referee concluded that: "Employer did not issue a final warning to Claimant for violation of the Attendance . . . Policy. Therefore, Employer has not followed its Progressive Discipline as it relates to time and attendance." (R.R. at 76a.)

However, the referee also determined that:

Employer identified [thirteen] dates between August 26, 2014, through August 3, 2015, whereby Claimant was late for her scheduled shift. The [r]eferee credits the testimony of Employer that Claimant was warned about her attendance and instructed to be on time for work. At the . . . hearing, Claimant did not dispute the dates listed regarding her lateness and absenteeism.

The Pennsylvania Courts have held that excessive absenteeism or tardiness may constitute willful misconduct. One of the fundamental requirements of maintaining an employment relationship is the regular attendance at work . . . .

Based on the testimony of Employer, corroborated by Claimant, the [r]eferee finds that the conduct of Claimant does exhibits habitual lateness, and violates the standards of

5

behavior that Employer can reasonably expect from its employees. Therefore, Employer has met its burden under Section 402(e) of the [Law].

\* \* \*

Claimant testified that she was [two] hours and [five] minutes late on August 3, 2015, as she had written down her schedule erroneously. The [r]eferee does not find that Claimant has presented good cause or justification for her lateness on August 3, 2015 . . . .

The [r]eferee finds that Claimant's entire testimony does not establish good cause or justification for her habitual lateness. Therefore, as Employer has met its burden under Section 402(e) of the Law, benefits are denied.

(R.R. at 77a.)

Claimant appealed to the Board, which affirmed. In doing so, the Board found and determined:

The Board finds that [Employer's] progressive disciplinary policy permitted bypassing steps in certain circumstances. The Board concludes that [Claimant's] history of absenteeism and final warning regarding a different matter justified [Employer's] deviation from its standard progressive discipline policy. Otherwise, the Board adopts and incorporates the referee's finding and conclusions[.]

(R.R. at 80a.)

On appeal to this Court,[2] Claimant argues that the Board erred in concluding that she committed willful misconduct. More specifically, Claimant asserts that Employer failed to follow its progressive disciplinary policy because she

---

[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Shrum v. Unemployment Compensation Board of Review*, 690 A.2d 796, 799 n.3 (Pa. Cmwlth. 1997).

6

did not receive a final warning with regard to tardiness or absences prior to being terminated. Claimant also contends that she has a history of being tardy; accrued approximately twelve occurrences in one year before receiving a coaching discipline; and, therefore, Employer tolerated or acquiesced to her behavior.

Under Section 402(e) of the Law, an employee is ineligible for unemployment compensation benefits when she has been discharged from work for willful misconduct connected with her work. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). The burden of proving willful misconduct rests with the employer. *Id.* Although willful misconduct is not defined by statute, it has been described as: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Id.*

When a charge of willful misconduct is based on the violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule, and the fact of its violation. *Owens v. Unemployment Compensation Board of Review*, 748 A.2d 794, 798 (Pa. Cmwlth. 2000). Where an employer promulgates a specific disciplinary system, it is incumbent upon the employer to follow that system. *PMA Reinsurance Corporation v. Unemployment Compensation Board of Review*, 558 A.2d 623, 626 (Pa. Cmwlth. 1989). Generally, the employer's failure to follow its policy in discharging an employee results in a failure to establish that the discharge was for willful misconduct. *Id.* However, an employer need not follow its disciplinary process for discharging employees when the process is discretionary in

7

nature and permits the employer to deviate from the system and/or reserves discretion to the employer for its implementation. *Johnson v. Unemployment Compensation Board of Review*, 744 A.2d 817, 821 (Pa. Cmwlth. 2000).

Moreover, the existence of a specific rule or policy is not necessary where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, and the employee's conduct is so inimical to the employer's interests that discharge is a natural result. *Orend v. Unemployment Compensation Board of Review*, 821 A.2d 659, 663 (Pa. Cmwlth. 2003). It is well-settled that an employer has the right to expect that its employees will attend work when they are scheduled and that they will be on time; habitual tardiness is behavior that is "inimical to an employer's interest." *Fritz v. Unemployment Compensation Board of Review*, 446 A.2d 330, 333 (Pa. Cmwlth. 1982).

"A conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where . . . the employee has been warned and/or reprimanded for prior similar conduct." *Department of Transportation v. Unemployment Compensation Board of Review (Nelson)*, 479 A.2d 57, 58 (Pa. Cmwlth. 1984). "We have consistently held that chronic tardiness, particularly after a warning, exhibits a sufficient disregard of the employer's interests to constitute willful misconduct." *Conibear v. Unemployment Compensation Board of Review*, 463 A.2d 1231, 1232 (Pa. Cmwlth. 1983). "Pennsylvania law does not require a detailed termination policy regarding tardiness or specific notice that the next infraction will result in discharge, so long as the employee's tardiness is habitual and the employee is provided with notice that future tardiness is unacceptable." *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013).

Here, the referee discounted as not credible the testimony of Employer's witness that its progressive disciplinary policy is discretionary. However, the Board, as the ultimate fact-finder, accepted this same testimony as credible. *See Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385-86 (Pa. 1985) (explaining that the Board, and not the referee, is the final arbiter of credibility determinations). Further, a reasonable interpretation of the plain language of the relevant portions of the Manual supports the Board's finding that Employer retained the right to terminate Claimant without following the four stages of the matrix. *See* R.R. at 131a (stating that "[t]here may be circumstances, in [Employer's] sole discretion, in which immediate termination of employment is warranted."); *id.* at 132a ("The guidelines below are intended as 'guidance' and are not all-inclusive. Steps may be added or passed-over depending on the individual circumstance and/or the employee's previous record."); *id.* at 133a ("The matrix is intended to be a guideline only and is neither all-inclusive nor binding in all circumstances; all surrounding facts and circumstances, including seriousness of the specific incident, the employee's past record, mitigation circumstances, and multiple infractions will be considered."). Therefore, we conclude that Employer did not have to follow a specific disciplinary procedure in order to discharge Claimant based upon attendance issues.

Pursuant to well-settled case law, we further conclude that Claimant's history and amount of occurrences, as defined in Employer's Attendance Policy, was habitual and excessive enough to constitute willful misconduct on the ground that it was inimical to the Employer's interests. This conclusion is bolstered by the fact that, in the initial written warning, Claimant received express notice that future tardiness and/or absenteeism would not be acceptable and was informed that

9

"[a]dditional occurrences will lead to termination." (R.R. at 128a.) *See Unemployment Compensation Board of Review v. Glenn*, 350 A.2d 890, 892 (Pa. Cmwlth. 1976) ("Habitual tardiness, particularly after warnings that a termination of services may result if the practice continues, is sufficient evidence of an employee's disregard of the employer's interest to sustain a finding of willful misconduct."); *see also Ellis*, 59 A.3d at 1163. Notably, Claimant does not challenge the reasonableness of Employer's Attendance Policy or how occurrences are calculated thereunder.

Contrary to Claimant's contention, we do not view the circumstances of this case as evidencing that Employer condoned, permitted, or otherwise encouraged Claimant to violate its Attendance Policy. Under this policy, occurrences are calculated on a yearly, look-back basis; Employer can make exceptions based upon the individual case; and Claimant received a coaching discipline on September 24, 2014, and an initial warning on February 2, 2015. The fact that it is possible that Employer could have discharged Claimant or disciplined her more harshly for her infractions at an earlier point in time is inconsequential. On this record, we cannot conclude that Employer abandoned enforcement of the Attendance Policy, waived the requirements of the Attendance Policy, or sanctioned Claimant's behavior as acceptable.

For the reason stated above, we agree with the Board that Claimant engaged in willful misconduct. In her brief, Claimant does not contend that she had good cause for any of her infractions under the Attendance Policy.

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda M. English,                                  :
                Petitioner        :
                                :   No.  155 C.D. 2016
                v.                      :
                                :
Unemployment Compensation     :
Board of Review,                               :
                Respondent     :

## *__ORDER__*

AND NOW, this 7th day of December, 2016, the January 5, 2016 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge