IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenwood Table Game Services,   :
              Petitioner   :
                          :
        v.                :  No. 1676 C.D. 2018
                          :  ARGUED: November 14, 2019
Unemployment Compensation Board  :
of Review,                   :
            Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED: December 5, 2019

Greenwood Table Game Services (Employer) petitions for review of the November 27, 2018 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to grant Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was eligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because Employer failed to prove that Claimant was discharged for willful misconduct. We affirm the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e).

## Background

Phi V. Le (Claimant) worked as a full-time table games dealer for Employer[2] from June 6, 2011 through July 4, 2018. Bd.'s Finding of Fact (F.F.) No. 1. Employer had an attendance points policy, which provided that an employee who accumulated five or more points during a rolling 12-month period would be discharged from employment. *Id.* No. 2.[3] Claimant was aware of Employer's attendance points policy. *Id.* No. 3.

---

[2] Employer operates Parx Casino in Bensalem, Pennsylvania. *See* Record (R.) Item Nos. 5, 8; Notes of Testimony (N.T.), 8/28/18, at 5.

[3] Employer's attendance points policy stated in relevant part:

[Employer's] attendance policy uses a point system as set forth below. In its sole discretion, [Employer] reserves the right to deviate from this system based upon the circumstances of each and any occurrence that gives rise to disciplinary action up to and including termination. Team Members will never be subject to disciplinary action or point accrual for legally protected absences or tardies [sic]. . . .

. . . .

- Tardiness – Arriving to work late without prior authorization is considered a lateness and each incident is equal to 1/2 attendance point (1 point on Holiday or "high-volume" days). Each lateness is counted separately. If you are late reporting to work by more than 30 minutes and have not notified your supervisor, you may lose your right to work the balance of the day and your pay will be amended accordingly.

. . . .

Our attendance system uses a progressive disciplinary system to discourage unscheduled absences and lateness. . . .

. . . .

On June 28, 2018, Employer issued a written warning to Claimant, advising him that he had accumulated 4.5 points as of June 17, 2018. *Id.* No. 4. Claimant typically allowed one hour for his commute to work, which frequently resulted in his arrival approximately 20 minutes before his scheduled start time. *Id.* No. 5.

On July 1, 2018, Claimant was delayed on his usual route to work due to a water main break. *Id.* No. 6. Employer charged Claimant with 0.5 points under its attendance points policy due to his late arrival. *Id.*

On July 2, 2018, Claimant allowed one hour and 20 minutes for his commute to work in light of the events of the previous day. *Id.* No. 7. Claimant also took a different route to avoid the issue he had experienced the previous day. *Id.* No. 8. Claimant encountered yet another water main break on his alternate route, which delayed his arrival at work. *Id.* No. 9. Employer charged Claimant with 0.5 points for his late arrival that day. *Id.* No. 10.

On July 4, 2018, Employer discharged Claimant because he had accumulated 5.5 points as of July 2, 2018 in violation of Employer's attendance points policy. *Id.* No. 11.

Claimant filed a claim for UC benefits, which the local UC Service Center denied. The Service Center found that: Employer had a points system for absenteeism and tardiness; Claimant had been warned about his attendance; and Claimant did not have good cause for any of his absences. R. Item No. 4. Thus, the Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

---

Once a Team Member reaches four attendance points, [he or she is] at the crossroads of [his or her] employment with [Employer]. Any additional points will result in termination.

N.T., 8/28/18, Ex. E-2.

Claimant timely appealed to the Referee, who held a hearing on August 28, 2018. Claimant appeared *pro se* and testified on his own behalf. Employer presented the testimony of Johanna Belanger, Employer's Director of Table Games Administration. Based on Ms. Belanger's credible testimony, the Referee determined:

> [E]mployer's attendance points policy allows for termination of employment if an employee receives five or more points for attendance violations during a rolling period of 12 months and . . . [C]laimant was aware of the policy. [E]mployer also offered documentary evidence proving [that E]mployer issued a final warning to [C]laimant on June 18, 2018 when he reached 4.5 points. [Ms. Belanger] confirmed that [C]laimant was discharged on July 4, 2018 after receiving a total of 5.5 points, which included points for two incidents of lateness on July 1, 2018 and July 2, 2018.

Ref.'s Order, 8/30/18, at 2. The Referee also credited Claimant's testimony regarding the reasons for his final two incidents of tardiness, as follows:

> [C]laimant testified that he typically allowed one hour for his commute to work, which often resulted in his arrival at work with 20 minutes to spare before his scheduled start time. [C]laimant explained that on July 1, 2018 he was delayed by a water main break and that on the following day he allowed an extra 20 minutes for his commute[] and took an alternate route. [C]laimant further explained that despite his best efforts, he was delayed by yet another water main break, resulting in the final incident of lateness.

*Id.* at 3.

Following the hearing, the Referee concluded that although Employer proved that Claimant had accumulated sufficient points to qualify for a discharge under its attendance policy, Claimant established good cause for his final two incidents of tardiness. The Referee explained:

4

A review of the competent evidence in the record reveals that [C]laimant violated [E]mployer's attendance policy by exceeding the allowed number of attendance points in a rolling period of 12 months. However, [C]laimant's credible testimony that the final incidents of lateness were due to circumstances beyond his control constitutes good cause for the policy violation. [W]hile the Referee recognizes an employer's right to discharge an employee, [C]laimant is eligible for [UC] benefits under Section 402(e) of the . . . Law.

*Id.* Therefore, the Referee reversed the Service Center's decision.

Employer timely appealed to the Board, which adopted the Referee's Findings of Fact and Conclusions of Law and further concluded:

On appeal, [E]mployer cites *Grand Sport Auto Body v. [Unemployment Compensation Board of Review]*, 55 A.3d 186 (Pa. Cmwlth. 2012) [(*en banc*),] and *Dotson v. [Unemployment Compensation Board of Review]*, 425 A.2d 1219 (Pa. Cmwlth. 1981)[,] to argue that [C]laimant's habitual tardiness is willful misconduct even if he had good cause for his final incidents of tardiness. *This argument is not persuasive because [E]mployer did not discharge [C]laimant for habitual tardiness.* [E]mployer has a points system that may trigger a discharge after a certain number of absences. By his final incidents of tardiness, [C]laimant accumulated 5.5 points, which were enough for [E]mployer to discharge him. The Board in no way questions [E]mployer's right to discharge [C]laimant. However, because [C]laimant had good cause for the final incidents of tardiness, the Referee properly concluded that [C]laimant is not ineligible for [UC] benefits. *See Gillespie v. [Unemployment Comp. Bd. of Review]*, 523 A.2d 1205 (Pa. Cmwlth. 1987).

Bd.'s Order, 11/27/18, at 1 (emphasis added). Thus, the Board affirmed the Referee's decision. Employer now petitions this Court for review.[4]

---

[4] Our scope of review is limited to determining whether the necessary factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

5

## Issue

Did the Board err when it considered only Claimant's final two instances of tardiness, rather than his history of habitual tardiness, in concluding that Claimant was eligible for UC benefits under Section 402(e) of the Law?

## Analysis

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). An employer seeking to prove that a claimant committed willful misconduct by violating a work policy "must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495, 500 (Pa. Cmwlth. 2018). If the employer satisfies its burden of proof, then "the burden shifts to the claimant to demonstrate good cause for violating the [policy]." *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

Employer's witness, Ms. Belanger, credibly testified that Employer had a written attendance points policy and that Claimant was aware of Employer's policy. Bd.'s F.F. Nos. 2, 3. Ms. Belanger also credibly testified that Claimant was discharged because he had accumulated 5.5 points under Employer's policy in the 12-month period preceding his discharge, with his final infraction occurring on July 2, 2018. *Id.* No. 11. Therefore, we conclude that Employer satisfied its burden of proving Claimant's violation of its attendance points policy.

6

We also conclude that Claimant established good cause for his final two attendance policy violations. The Board credited Claimant's testimony that he was late to work on July 1 and July 2, 2018 because his commute was disrupted by two separate water main breaks. Bd.'s F.F. Nos. 6, 9; *see Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999) (stating that the Board is the ultimate factfinder in UC cases and is empowered to resolve conflicts in evidence, determine the weight to be accorded the evidence, and determine the credibility of witnesses).[5] Thus, the Board concluded that Claimant established good cause because the final two incidents of tardiness were due to circumstances beyond his control. Consequently, without those final two incidents of tardiness – totaling one point under Employer's attendance points system – Claimant fell below the threshold for termination of his employment.

On appeal, Employer does not dispute the Board's finding that Claimant had good cause for his final two tardiness infractions. Rather, Employer contends that, notwithstanding its attendance points policy, Claimant should be denied UC benefits because his history of habitual tardiness constituted willful misconduct under Section 402(e) of the Law.

Our Court has recognized that "chronic tardiness, particularly after a warning, exhibits a sufficient disregard of the employer's interests to constitute willful misconduct." *Conibear v. Unemployment Comp. Bd. of Review*, 463 A.2d 1231, 1232 (Pa. Cmwlth. 1983). Moreover, "Pennsylvania law does not require a detailed termination policy regarding tardiness or specific notice that the next infraction will

---

[5] At the hearing, Claimant attempted to introduce into evidence printouts from a local news website, purporting to show that water main breaks occurred on Claimant's routes on July 1 and July 2, 2018. Employer's counsel, however, objected to the admission of those documents. The Referee sustained the objection but permitted Claimant to offer first-hand testimony about the traffic issues he experienced on those dates. *See* N.T., 8/28/18, at 12-13.

7

result in discharge, so long as the employee's tardiness is habitual and the employee is provided with notice that future tardiness is unacceptable." *Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013). In light of this precedent, Employer asserts that the Board should have found that Claimant committed willful misconduct due to his habitual tardiness, particularly because he had been warned about his attendance several times before his final infraction. *See* N.T., 8/28/18, Ex. E-4.

Employer relies extensively on this Court's decision in *Grand Sport*, wherein we rejected the claimant's assertion that chronic absenteeism did not amount to willful misconduct simply because his final absence from work was justified. 55 A.3d at 187. Before his final absence, the claimant was tardy or absent without a valid excuse 19 times in seven months. *Id.* at 188. Only three of the claimant's 19 absences related to illness or a medical appointment, and the claimant offered no justification for his other 16 absences. *Id.* at 193.

On appeal, this Court concluded that the claimant's absenteeism was excessive, inimical to the employer's interests, and beneath the standard of behavior the employer had the right to expect of its employees. *Id.* at 193-94. Upon reviewing the claimant's testimony, we also noted that the "[c]laimant demonstrated a decidedly cavalier attitude toward [the e]mployer's reasonable expectation that he appear at work on time." *Id.* at 194. We held that the fact that the claimant's final absence – due to a cancelled flight – was justified did not outweigh his history of excessive absenteeism. *Id.* at 193-94. Therefore, we concluded that "[b]ased on [the c]laimant's testimony regarding his *history* of absences, tardiness, and his failure to offer good cause to justify those absences," the claimant was not entitled to UC benefits under Section 402(e) of the Law. *Id.* at 194 (emphasis in original).

8

We find that Employer's reliance on *Grand Sport* is misplaced, as it is factually distinguishable from this case. In reaching our decision in *Grand Sport*, we explained:

> [H]ere, *the Board did not find that [the e]mployer discharged [the c]laimant for his March 22, 2011 absence, which was excused. Rather, it found that [the c]laimant was discharged based on his history of absenteeism and tardiness.* Thus, although the Board credited [the c]laimant's testimony regarding his last absence, the Board also found [the e]mployer's witnesses credible about [the c]laimant's earlier unexcused tardiness and absences, which [the c]laimant did not dispute or attempt to explain at the hearing. *The Board further credited [the e]mployer's testimony that this was the reason [the e]mployer discharged [the c]laimant.*

*Id.* at 193 (emphasis added).

Here, unlike *Grand Sport*, the Board specifically found that Employer discharged Claimant because his final infraction brought him over the maximum points allowed under Employer's attendance points policy, *not* because of habitual tardiness. Bd.'s F.F. No. 11; Bd.'s Order, 11/27/18, at 1. This finding is supported by the testimony of Employer's witness, Ms. Belanger, which the Board credited. Ms. Belanger testified that Claimant was terminated because "he had reached [5.5] attendance points as of July 2[,] 2018." N.T., 8/28/18, at 6.[6] While Ms. Belanger testified to Claimant's other tardiness infractions in the preceding 12-month period,

---

[6] In fact, Employer avers in its appellate brief:

> [C]laimant's employment with [E]mployer was terminated on July 2, 2018 *due to violations of [E]mployer's attendance policy. During the one[-]year period preceding the termination of [C]laimant's employ[ment], [C]laimant accumulated 5.5 attendance points.* These points represented the eleven (11) occasions on which [C]laimant was tardy without authorization during the past year.

Employer's Br. at 8 (citations and footnotes omitted) (emphasis added).

9

*id.* at 7 & Ex. E-3, such testimony was offered to explain how Claimant had acquired 5.5 points under Employer's attendance points policy. Furthermore, Employer never asserted chronic tardiness as the reason for Claimant's discharge until its appeal to the Board. *See* R. Item No. 11; *see also Scott v. Unemployment Comp. Bd. of Review*, 105 A.3d 839, 849 (Pa. Cmwlth. 2014) (stating that an employer is bound by its stated reasons for dismissal and cannot later offer additional reasons if the stated reasons do not amount to willful misconduct).[7]

As the Board correctly determined, Employer's evidence demonstrated that with his final infraction on July 2, 2018, Claimant had accumulated sufficient points under Employer's attendance policy to justify his termination from employment. Bd.'s F.F. No. 11; Bd.'s Order, 11/27/18, at 1. Contrary to *Grand Sport*, the Board here made no factual findings regarding any other infractions before the July 2018 incidents, nor did the Board make a finding of habitual tardiness based on the evidence presented at the hearing.[8]

We find this Court's decision in *Gillespie* instructive here. In *Gillespie*, this Court considered a claimant's eligibility for UC benefits under Section 402(e) of the Law where she was discharged for exceeding the number of points permitted under the employer's written attendance policy. We ultimately remanded the matter to the

---

[7] Notably, a document titled "Confirmation of Claimant and Employer Information" indicates that in July 2018, Employer "[r]efuse[d] to [p]rovide" the reason for Claimant's separation from employment to the Department of Labor and Industry (Department). R. Item No. 3. The document also states that by failing to provide such information, "[E]mployer[] understands and agrees that the [Department] should proceed with making a determination without this additional information and that [E]mployer[] may not be allowed to present the omitted information at a later time." *Id.*

[8] *But cf. Dotson*, 425 A.2d at 1220 (upholding the denial of UC benefits based on the claimant's history of absenteeism where *it was clear from the record "that the claimant's history and pattern of absences precipitated his discharge, not any one incident"*) (emphasis added).

Board to determine whether the claimant's "failures to comply with the policy resulted in sufficient points, excluding points assessed for justified absences, to exceed the discharge limit and constitute willful misconduct." 523 A.2d at 1207. In doing so, we stated:

> [T]he referee found, on substantial record evidence, that the [claimant], at times, failed to give notice of her absences according to the [employer's] policy. . . . [W]hile such conduct would ordinarily constitute willful misconduct, we have held that, *where, as here, an employer erects a specific disciplinary system which tolerates certain conduct, which ordinarily would constitute willful misconduct, that conduct cannot be held to rise to the level of willful misconduct until the specified number of repetitions has been met.*

*Id.* (emphasis added); *see also PMA Reinsurance Corp. v. Unemployment Comp. Bd. of Review*, 558 A.2d 623, 626 (Pa. Cmwlth. 1989) ("The promulgation of specific rules puts employees on notice that the employer will not consider such conduct to be adverse to its interest *until the requisite number of violations have been committed*.") (emphasis added). Hence, because Employer had an attendance points policy in place, if Claimant's infractions did not exceed the maximum points permitted under Employer's policy, his conduct cannot rise to the level of willful misconduct.

We reiterate that to establish willful misconduct, the employer must show that the claimant engaged in "conduct[] of an intentional and deliberate nature." *Myers v. Unemployment Comp. Bd. of Review*, 625 A.2d 622, 625 (Pa. 1993). While attendance issues may justify a claimant's dismissal, absenteeism or tardiness will not render the claimant ineligible for UC benefits unless his or her conduct was willful. "*Even excessive absenteeism, where justified* or where properly reported according to company policy, although a legitimate basis for discharge, *does not*

11

*constitute willful misconduct or disqualify a claimant from receiving [UC] benefits*." *Adept Corp. v. Unemployment Comp. Bd. of Review*, 437 A.2d 109, 110 (Pa. Cmwlth. 1981) (emphasis added).

Claimant's testimony established that he did not deliberately violate Employer's attendance policy on July 1 and July 2, 2018. Bd.'s F.F. No. 5. Claimant testified that he typically allotted one hour for his commute from Philadelphia to Bensalem to account for unexpected delays and that he usually arrived at work early. N.T., 8/28/18, at 15. Claimant further testified that after encountering a water main break on his normal route on July 1, 2018, he allowed extra time for his commute on July 2, 2018 and took a different route. *Id.* at 15-16. He also stated that he "always gave [Employer] a heads up" when he was running late for work. *Id.* at 13-14. We conclude that Claimant's testimony, which the Board credited, was sufficient to establish good cause for his final two incidents of tardiness. *See Adept*, 437 A.2d at 110 (recognizing that "transportation problems beyond [a claimant's] control" may not constitute willful misconduct under Section 402(e) of the Law). Without those final two infractions, Claimant's points fell below the threshold for termination of his employment under Employer's policy.

### Conclusion

In sum, we conclude that Employer discharged Claimant pursuant to its attendance points policy because Claimant exceeded the maximum number of points allowed with his final infraction on July 2, 2018. We also conclude, based on the credible evidence of record, that Claimant established good cause for his final two incidents of tardiness on July 1 and July 2, 2018, thereby bringing his attendance points below the threshold for termination of his employment. Because Claimant established good cause for his final two policy violations, we agree with the Board

that he is eligible for UC benefits under Section 402(e) of the Law.  Accordingly, we affirm the Board's Order.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenwood Table Game Services,  :
                  Petitioner  :
                                       :
        v.  : No. 1676 C.D. 2018
                                         :
Unemployment Compensation Board  :
of Review,  :
                  Respondent  :

# **O R D E R**

AND NOW, this 5th day of December, 2019, the Order of the Unemployment Compensation Board of Review, dated November 27, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge