# Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Stephen E. Schmid, Appellant.

Submitted on briefs, June 6, 1975, to Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Ronald I. Rosenstein,* with him, of counsel, *Rosenstein & Kleitman,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, July 16, 1975:

Claimant-appellant has been ruled ineligible to receive unemployment compensation benefits under Section 402 (e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, *as amended,* 43 P. S. §802(e), by the Bureau of Em-

ployment Security, the referee, and the Unemployment Compensation Board of Review. Section 402 (e) provides in part:

"An employee shall be ineligible for compensation for any week—

. . . .

"(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work,. . . ."

The evidence reveals that claimant had worked as a spray gun operator for Fabuglass, Inc., for approximately 15 months prior to March 29, 1974, the date his employment there was terminated. At least during the last six months of his employment and apparently for an even longer period, claimant had been constantly late for work—as late as an hour to an hour and a half each day. Many of the other 15 or 20 shop employees were also regularly late for work. As a result, on January 16, 1974, the plant manager made up and posted the following shop rules over his name:

"January 15, 1974

"SHOP RULES

"1. *Work* starts at 8:00 a.m.

"2. Anyone starting after 8:15 a.m. will be docked 1 hour.

"3. No one will work past 4:30 p.m. without my permission.

"4. Anyone with three 1 hour penalties in a 30 day period (not 30 working days but 30 calendar days) will get two days off without pay.

"5. Anyone getting a third 'two days off without pay' penalty in a six month period will get the shoe.

"6. Breaks will be 15 minutes long *only*.

"7. Lunch will be 30 minutes long *only*.

"8. All employees will call in *everytime* they will be absent or *legitimately* late.

"9. Anyone who forgets to call in twice during a 30 day period will get two days off without pay.

"10. All employees will have a daily assignment and unless told otherwise will stay on the job.

"11. Everyone will *stop working 15 minutes* early for shop clean-up. This will include: Putting tools away. cleaning rollers & brushes, replacing dirty solvent with clean solvent, wiping clean the entire chopper and gel-coat systems, replacing blades and rollers if necessary in chopper and gel-coat systems" (Emphasis in original.)

Claimant continued to arrive late for work. Sometimes he was docked one hour's pay and sometimes he was not. Claimant had received one "two days off without pay" penalty approximately two weeks prior to March 29, 1974, and was warned at that time that he would be discharged if he continued to be in violation of the shop rules. On March 29, claimant was again late for work. At the end of that work day, claimant's employment was terminated. Claimant alleges that he was laid off; the plant manager stated that claimant was discharged for his constant tardiness.

The Board of Review, after stating the definition of willful misconduct that we set forth in *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973), held that "claimant's conduct in reporting for work late, especially after receiving numerous warnings constitutes willful misconduct in connection with his work." In *Kentucky Fried Chicken, supra,* 10 Pa. Commonwealth Ct. at 97, 309 A.2d at 168-69, we said:

"For behavior to constitute wilful misconduct, it must evidence (1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpa-

bility, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations."

Normally, constant tardiness would clearly fall within numbers (1) and (3) above. *Harbutz v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 235, 309 A.2d 840 (1973). In the instant case, however, the employer has told its employees by means of the shop rules what standards of behavior it expects, and what the employee could expect for violations of those rules. Although claimant continued to arrive late for work, he had only been given one "two days off without pay" penalty and, therefore, under these circumstances, cannot be said to be guilty of willful misconduct. In *Morris Unemployment Compensation Case,* 203 Pa. Superior Ct. 122, 198 A.2d 629 (1964), the employer had a regulation stating that three days' absence from work without notification to the employer would be grounds for discharge. The claimant there was discharged after two days' absence. In ruling that the claimant was not guilty of willful misconduct, the Superior Court said: "Management here advised employees that notice of absences was not a violation unless continued in for three working days. The burden of keeping the employment relationship alive is certainly a duty of the employee and absenteeism ordinarily is an intentional disregard of the employer's interest and amounts to willful misconduct. In this case, however, the promulgation of the rules was notice to the employee that the employer would not consider absenteeism inimicable to his interest unless continued in for a period of three working days. Under such circumstances, this claimant was not a voluntary quit and could not be adjudged guilty of a reckless disregard of his duty to his employer." *Morris, supra,* 203 Pa. Superior Ct. at 125, 198 A.2d at 630.

In the instant case, the employer gave notice that although tardiness was inimicable to its interest, it was

not sufficiently inimicable to result in discharge until the employee had received three "two days off without pay" penalties.

We hold that the Board erred as a matter of law in determining that the conduct for which claimant was discharged constituted willful misconduct. Moreover, the record supports claimant's contention that he was in fact laid off. The plant manager testified that claimant's termination was amicable and that the plant manager never used the word "fired," but rather spoke in terms of "laying him [claimant] off." The evidence indicates that claimant was told by the plant manager to apply for unemployment compensation and to check back with the employer for possible part-time work.

Accordingly, we enter the following

ORDER

Now, July 16, 1975, the order of the Unemployment Compensation Board of Review, dated September 4, 1974, denying benefits to claimant, Stephen E. Schmid, is reversed and the record is remanded for a determination of the amount of compensation due claimant.