544 A.2d 1085

Shaun Brady, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs March 28, 1988, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Lee W. Jackson, Kirschner, Walters & Willig,* for petitioner.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BLATT, July 20, 1988:

Shaun Brady (petitioner) petitions for our review of the decision of the Unemployment Compensation Board of Review (Board) affirming the denial of benefits by the

referee pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e) (willful misconduct). We will reverse.

The petitioner was employed by the City of Philadelphia, Department of Revenue (employer), as a revenue examiner from August 16, 1981 to February 21, 1986. On February 4, 1986, he called in to work at 11:33 a.m. to indicate that he was sick and would not be coming in that day. He later reported to work at approximately 12:30 p.m. requesting leave to go to the Municipal Medical Dispensary. Because he had been scheduled to begin work at 8:30 a.m. on that day, his call violated the employer's rule that he must call in no later than one hour after he is scheduled to begin work. As a direct result of this incident, he was suspended and later discharged.

The petitioner applied for unemployment compensation benefits on March 30, 1986, which were granted by the Office of Employment Security. The employer appealed this decision to the referee who reversed and denied benefits. The petitioner then appealed to the Board, which made more explicit findings of fact based on the record from the referee's hearing and then affirmed the referee.

The Board's findings of fact most relevant to this appeal are as follows:

2. Claimant was discharged from his employment because of excessive absenteeism without proper notification to the employer.

3. The claimant had been warned many times about his continuing failure to properly report off from work and his absenteeism. The claimant had been previously suspended four times for these infractions.

. . .

6. As a result of his conduct on February 4, 1986, the claimant was suspended and eventually discharged.

7. The claimant's actions were not based upon good cause.

8. The employer not only complied with the progressive disciplinary policy, but permitted the claimant more than enough chances for improvement.

Board's Decision at 1, Reproduced Record (R.R.) at 1a.

The petitioner argues that the Board erred when it concluded that he was guilty of willful misconduct. We agree.[1]

Willful misconduct under Section 402(e) of the Law has been defined by this Court as a wanton and willful disregard of an employer's interest, a deliberate violation of rules, a disregard of standards of behavior which the employer can rightfully expect from its employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). An employer may notify its employees of its interests and the standards of behavior it expects by promulgating rules. By doing so, it indicates what it would consider to be willful misconduct. *Unemployment Compensation Board of Review v. Schmid,* 20 Pa. Commonwealth Ct. 286, 341 A.2d 553 (1975).

---

[1] Our scope of review of this matter includes a determination of whether constitutional rights were violated, errors of law committed, and whether essential findings of fact are not supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

The record includes a copy of the Department of Revenue Sick Leave Rules and Regulations as amended on January 15, 1979 and revised July 1, 1984 (Rules). The "Penalties" section of these Rules reads in pertinent part as follows:

> An employee who violates any of the provisions of these rules and regulations under Section I [pertaining to requirements for notification of sick leave] or II [pertaining to requirements for medical certification] will not be paid for the days not worked and will be disciplined in accordance with the following procedure:
>
> First Occurrence—Written Warning
>
> Second Occurrence—One (1) Day Suspension
>
> Third Occurrence—Three (3) Day Suspension
>
> . . . .
>
> Fourth Occurrence—Ten (10) Days Suspension
>
> Fifth Occurrence—May be discharged
>
> . . . .
>
> An occurrence is a violation of any of the provisions under Section I and II of these rules and regulations *in a calendar year.*

Petitioner's Exhibit 3B, R.R. at 5a (emphasis added).

The employer's Notice of Dismissal, Original Record Item No. 5, indicates that the petitioner received warnings regarding unsatisfactory attendance on November 11, 1981 and January 4, 1982.[2] The record further indicates that the petitioner was suspended for 3 days for a violation occurring on June 10, 1982; for 7 days for a violation on January 17, 1983; for 15 days for violations

---

[2] All of the personnel records containing the above and following information were authenticated by the employer's witness, Mr. Rommie Sherman, who is the employer's personnel assistant.

on January 26, 27 and February 10 of 1984. On October 16, 1984, the petitioner received a warning for violations occurring on March 23, July 3, October 4 and October 11 of 1984.[3] He was suspended for 29 days on October 30, 1985 for violations on September 16 and October 16 of 1985. This notice of suspension, dated October 30, 1985, indicated that on the petitioner's next occasion of AWOL,[4] he would be dismissed. The petitioner was later suspended for 30 days beginning February 22, 1986 due to the incident of February 4, 1986, the same incident for which he was subsequently dismissed. The explanation attached to his last notice of suspension ended:

> Because of the occasion of AWOL which occurred on February 4, 1986 and in view of your previous disciplinary record for this type of offense, you are being suspended for a period of thirty (30) days.

Employer's Exhibit 1a.

The record is clearly replete with examples of the petitioner's poor attendance and of subsequent warn-

---

[3] The record contains the warning dated October 16, 1984 which includes the following remarks:

> As stated at the hearing on Tuesday, October 16, 1984, you have been AWOL on four (4) occasions since receiving a fifteen (15) day suspension on February 23, 1984 for poor attendance. Because you presented the Department with information which indicated that you are taking definitive steps to correct this situation you are not being dismissed at this time.
>
> The Department will cooperate fully with you in your efforts. However, if this situation is not resolved in the very near future and your attendance continues to be erratic, action will be taken to effect your immediate dismissal.

Employer's Exhibit 3.

[4] Improper notice of absence is considered as absent without leave (AWOL) by the employer.

ings and suspensions over the period of six years. It is just as clear, however, that the employer did not follow its own disciplinary policy in dealing with this problem. Regardless of whether one interprets the phrase "a calendar year". as twelve months or the year beginning January 1, the petitioner did not have five occurrences of his problem with absenteeism in the calendar year before he was dismissed. The Board's finding that the employer complied with its progressive disciplinary policy, therefore, is not supported by substantial evidence.

The Board argues in its brief to this Court that, although the employer did not follow the disciplinary schedule found in its Rules, it did have authority to discharge the petitioner pursuant to the clause in Philadelphia Civil Service Regulation 22.01, which indicates that an appointing authority may suspend or discharge an employee due to unauthorized absence. The Board further argues that the employer also had warned the petitioner before his. dismissal that his next violation of the Rules would result in dismissal. As a result of this notice, it argues, the petitioner did have knowledge of the behavior expected of him and the resulting consequences if he failed to follow that standard.

On the contrary, we believe that it is reasonable for the petitioner to rely on the standard set forth in the employer's own Rules. These Rules are indicative of the standards of behavior the employer expects of its employees.[5] As the record shows, the petitioner committed

---

[5] We also note that the employer completed a · report on the petitioner's performance in December of 1985. In the category of attendance, his performance was rated as "improvement needed" rather than "unacceptable". The following comments were included: "You demonstrate a potential for a 'superior' rating. I believe this can be attained with improvement in your attendance record." Petitioner's Exhibit 2.

seven Rule violations in 1984. As a result, a hearing was held and it was decided that he would not be terminated at that time. Subsequently, he committed only two violations in 1985 and only one in 1986. The clear wording of the Rules does appear to be unusually generous. If, however, the employer does not intend to be so generous, it can and should rewrite its policy. As of the date when the petitioner was dismissed, he had not committed sufficient violations in that year to warrant dismissal for willful misconduct.

We will, accordingly, reverse the Board.

### ORDER

AND NOW, this 20th day of July, 1988, the decision and order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed.