IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Zimmerman,              :
          Petitioner    :
                         :   No.  649 C.D. 2019
          v.           :
                         :   Argued:  May 14, 2020
Unemployment Compensation  :
Board of Review,             :
          Respondent   :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                           FILED:  July 23, 2020


Scott E. Zimmerman (Claimant) petitions for review of the May 1, 2019 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that found Claimant was ineligible for unemployment compensation (UC) benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

**Facts and Procedural History**

Claimant was employed by Walters Services Inc. (Employer) as a full-time flex driver from July 7, 2016, until November 12, 2018, when he was terminated. (Board Finding of Fact (F.F.) No. 1; Certified Record (C.R.) at Item No. 10, Notes of Testimony (N.T.), 1/16/19, at 7.) Following Claimant's termination of employment, Claimant filed for UC benefits. On December 3, 2018, the local service center found Claimant ineligible for benefits because it determined that Claimant had violated Employer's absenteeism and/or tardiness policy and that Claimant did not have good cause for violating the policy. (C.R. at Item No. 5.) Claimant appealed and, subsequently, a hearing was held before a referee on January 16, 2019, at which Claimant and two witnesses on Employer's behalf testified.

Teresa Kurtz, the head of Employer's human resources department, testified that Claimant was terminated for missing a mandatory meeting, which violated both Employer's attendance policy and progressive disciplinary policy. (N.T., 1/16/19, at 1, 8-10.) She noted that the two policies "build on one another." *Id.* at 10. Kurtz explained that the attendance policy is a points-based policy and that employees accumulate points whenever they are late for or miss work. *Id.* at 9. She also stated that the attendance policy is progressive, with employees receiving a "coaching" after obtaining 5 points, a "verbal warning" after obtaining 10 points, a "written warning" after obtaining 15 points and, finally, termination after 20 points. *Id.* at 9-10.

Kurtz noted that Claimant had proceeded through the attendance policy and received a coaching on May 23, 2018, and a verbal warning on June 1, 2018. *Id.* at 11. Kurtz testified that Claimant received a written warning on September 10, 2018, for an incident that occurred on September 7, 2018. *Id.* With regard to the September 7, 2018 incident, Kurtz explained that Claimant had been assigned a route, but returned without finishing the route due to a clogged hose. Kurtz also noted that this incident

2

was an "extreme offense" that automatically resulted in a five-day suspension pursuant to Employer's progressive disciplinary policy and that, following the incident, Claimant signed a final warning, which stated that any further incidents would result in automatic termination. *Id.* at 11-12. Kurtz noted that Claimant received a quarterly review on November 5, 2018, and that, although the review was not a step in the progressive disciplinary policy, it informed Claimant that he was required to be on time for all meetings and for his scheduled work time and that he needed to improve in that area. *Id.* at 12. Kurtz testified that Claimant was terminated after missing a mandatory meeting on November 12, 2018. *Id.* at 12-13.

On cross-examination, Claimant's counsel questioned Kurtz regarding Employer's policies. Kurtz acknowledged that, although Claimant was late on May 15, 2018, he had only obtained three points for that incident and that the coaching he had received was unrelated to attendance. *Id.* at 14. Kurtz also admitted that, pursuant to the attendance policy, five points are subtracted from an employee's attendance points each June 30 and December 31, and that five points should have been deducted from Claimant's attendance points on June 30, 2018, but that five points were not deducted from Claimant's attendance points on that date. *Id.* at 14, 16. Kurtz stated that Claimant had an unauthorized absence on June 1, 2018, for which he received five attendance points. *Id.* Kurtz also stated that Claimant was late again on June 25, 2018, for which he accumulated an additional three points. *Id.* at 15.

Additionally, Claimant's counsel questioned Kurtz about the interaction between Employer's attendance policy and progressive disciplinary policy. Kurtz stated that an attendance policy issue could bump an employee up a level in the progressive disciplinary policy, the attendance policy was built into the progressive disciplinary policy, and employees were told that the attendance policy was built into the progressive disciplinary policy when it was introduced. *Id.* at 15-16. However, she acknowledged that there was nothing in writing stating that the attendance policy was

3

built into the progressive disciplinary policy. *Id.* at 16. Upon questioning by the referee, Kurtz stated that missing the mandatory meeting was an offense under both the progressive disciplinary policy and attendance policy. *Id.* at 18. She further testified that Claimant committed an extreme offense on September 7, 2018, and that missing the mandatory meeting on November 12, 2018, was considered a minor offense under the progressive disciplinary policy, because it constituted "failing to follow practices as needed for the specific job assignment." *Id.*

Next, Cody Shenk, Claimant's direct supervisor, testified. He stated that Claimant missed a company-wide meeting regarding insurance benefits on November 12, 2018, and that Claimant had been notified of the meeting by email and Google Calendar. *Id.* at 18-19. Shenk testified that Claimant told him that he missed the meeting because he forgot the meeting and overslept. *Id.* at 19.

With respect to the "extreme offense" that occurred on September 7, 2018, Shenk explained that he had asked Claimant to come in on a Saturday to finish a project, but that Claimant said he was not coming in. *Id.* at 19. Shenk deemed this a refusal of work; however, he acknowledged that Claimant normally did not work on Saturday and was not on call or assigned to work the Saturday in question. *Id.* at 20. Shenk elaborated that he asked Claimant to work on Saturday because Claimant had not finished his work on his assigned day and, therefore, was responsible for finishing the work on Saturday. *Id.* On cross-examination, Shenk stated that Claimant finished his assigned job on September 7, but then was assigned another employee's work after that employee went home sick. *Id.* at 20-21. Shenk acknowledged that when Claimant attempted to complete the additional job, Claimant was unable to finish because the other employee had not prepared the truck properly by placing the necessary equipment in the truck. *Id.* However, Shenk asserted that Claimant should have completed a pre-trip assessment to determine what equipment was in the truck. *Id.*

4

Finally, Claimant testified. Claimant stated that on September 7 he was driving another employee's truck, but was unable to complete the route because the hose was clogged and he could not pump any more waste through the hose. *Id.* at 21. Claimant attempted to unplug the hose using Employer's suggested methods, but was unable to do so because there was not a "spare wand" in the truck. *Id.* Claimant stated that he then tried to contact his supervisor to figure out what to do, but that no one responded. *Id.* at 22. Accordingly, Claimant drove the truck back to the home base. *Id.* Once Claimant returned to his home base, Shenk approached him and asked him to finish his assignment on Saturday. *Id.* Claimant stated he told Shenk that he could not make it and was not on call and that Shenk responded, "okay we'll figure it out" and walked away. *Id.* Claimant testified that Shenk did not tell him that it was mandatory that he work on Saturday or that he would be disciplined if he did not show up. *Id.* Claimant stated that when Shenk told him they would figure it out, he presumed that someone else would complete the assignment on Saturday. *Id.* at 22-23. He also testified that he never refused work, never told Shenk that he would not do something, and would have come into work on Saturday if Shenk had told him he would be disciplined for not showing up. *Id.* at 23-24.

On cross-examination, Claimant admitted that he signed the final warning he received for the September 7 incident, which informed him that he would be automatically terminated for any further incidents, but that he crossed out the word "agree" where it asked him whether he agreed with the final infraction. *Id.* at 24. He also acknowledged that he did not attend the November 12 meeting because he forgot about it, and did not know it was mandatory. *Id.* at 25. Although Claimant missed the 5:00 a.m. meeting, he stated that he arrived at 6:30 a.m., the start of his regular shift. *Id.* at 26. In rebuttal, Kurtz testified that the email about the meeting said the meeting was mandatory. *Id.* at 25.

In a decision mailed February 19, 2019, the referee found Claimant ineligible for UC benefits. The referee credited Employer's testimony that Claimant "was warned his job was in jeopardy if he was late for a meeting." (Referee decision at 2.) He determined that Claimant "did not attend a meeting on November 12, 2018," and that Claimant did not have good cause for his failure to attend the meeting. *Id.* Accordingly, the referee concluded that Employer established that Claimant was terminated for willful misconduct. *Id.*

Claimant timely appealed the referee's decision to the Board, which made the following, pertinent, findings of fact:

2. The employer maintains a policy that regards refusal to do an assigned job as an "extreme" offense, which warrants a five-day unpaid suspension.

3. On September 10, 2018, the claimant was issued a written notice that advised him that if any incident occurs, he will be automatically terminated.

4. On November 12, 2018, the claimant was required to attend a mandatory meeting for all employees. All employees were notified by email and by [G]oogle [C]alendar reminders. Despite being notified, the claimant failed to attend the meeting.

5. The claimant told his supervisor that he had forgot about the meeting and overslept.

6. On November 12, 2018, the claimant was terminated for missing the mandatory meeting.

(F.F. Nos. 2-6.)

The Board found that Claimant knew that there was a meeting on November 12, 2018. (Board decision at 2.) Although Claimant said he did not know the meeting was mandatory, the Board discredited this testimony because Claimant also testified that he forgot about the meeting and overslept. *Id.* Since Claimant did

6

not dispute that he failed to attend the meeting, the Board concluded Employer met its burden to demonstrate willful misconduct. *Id.*

The Board also determined that Claimant did not prove good cause for his actions. Although Claimant contended that Employer failed to follow its progressive disciplinary policy, the Board found otherwise. *Id.* The Board concluded that Employer "provided credible evidence that it issued [Claimant] a final warning on September 10, 2018, for an 'extreme' offense." *Id.* The Board also determined that it was not required to "examine the underlying offense which gave rise to the final warning; only whether [Claimant] had requisite notice that he could be discharged." *Id.* The Board found that "the warning advised [Claimant] that any future infraction [would] lead to automatic termination." *Id.* The Board further concluded that "[r]egardless of the fact that [Employer] maintained a separate attendance point system, [Claimant] had requisite notice that *any* future infraction [would] be grounds for termination." *Id.* (emphasis added). Accordingly, the Board held that Claimant was ineligible for benefits under section 402(e) of the Law. *Id.* Claimant now petitions this Court for review of the Board's order.[2]

---

[2] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

"Substantial evidence is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

## Discussion

On appeal, Claimant argues that the Board erred as a matter of law by (1) concluding that Claimant was ineligible for benefits after being terminated for an absence, even though Employer's attendance policy called for a penalty less than termination; and (2) failing to examine the underlying incident that resulted in Claimant's final warning and capriciously disregarding evidence that Claimant did not violate Employer's progressive disciplinary policy.

We first address whether the Board erred in concluding that Claimant was ineligible for benefits after being terminated for an absence. Claimant argues that the Board capriciously disregarded evidence showing that Employer's attendance policy called for a penalty less than termination. Claimant contends that where an employer's policy calls for a termination only after a certain number of violations, employees are put on notice that an employer will not consider such conduct to be adverse to its interest until the requisite number of violations have occurred. Claimant asserts that, here, under Employer's attendance policy, employees accrued points for instances of absenteeism and tardiness, employees were only terminated after accumulating 20 points, and that 5 points are deducted on June 30 each year.

Claimant notes that at the referee hearing, a dispute arose regarding whether five points were deducted from Claimant's points on June 30. Claimant argues that the Board failed to resolve this dispute and, otherwise, ignored overwhelming evidence that Claimant had less than 20 points when terminated. Claimant maintains that under the attendance policy, Claimant should have had only six points prior to missing the November 12, 2018 meeting and, because Claimant arrived an hour and a half late the day he missed the mandatory meeting, Claimant should have accumulated an additional four points for missing the meeting. Because this totals only 10 points, which is less than the 20 points required for termination, Claimant argues that he should

8

not have been terminated pursuant to the attendance policy and, therefore, did not commit willful misconduct.

Claimant also argues that the Board committed an error of law by falsely conflating Employer's progressive disciplinary policy with its attendance policy. Claimant asserts that because Employer's progressive disciplinary policy does not contemplate or mention attendance issues, the Board erred in finding willful misconduct based on Claimant's absence. In contrast to the attendance policy, which addresses attendance issues, the progressive disciplinary policy does not address the same. Claimant notes that although Employer's witness testified that the two policies were intended to build on one another, the witness also testified there was nothing in either of the written policies to explain any such interaction. Claimant argues the Board erred in not addressing the interaction of the policies or whether Claimant was aware of the intended interaction of the policies. Because Employer's two separate policies establish that Employer drew a distinction between attendance issues and disciplinary violations, Claimant maintains that "[n]othing in the final warning memo was sufficient to put [him] on notice that he would be terminated for a single [missed] meeting when Employer's written attendance policy clearly indicate[d] otherwise." (Claimant's Br. at 21-22.)

Conversely, the Board argues that prior to termination, Claimant had violated Employer's progressive disciplinary policy by refusing to do an assigned job, after which Employer imposed a five-day suspension and final warning. The Board asserts that the final warning advised Claimant that in addition to violating the progressive disciplinary policy, Claimant had accrued points for lateness and unexcused absence, such that he would be automatically discharged for another incident. The Board observes that Claimant incurred another incident by failing to show up for the November 12 meeting.

9

The Board contends that contrary to Claimant's argument, Claimant was not discharged because he accumulated enough points under the attendance policy, but rather, he was discharged because he failed to attend the mandatory meeting, which represented another incident under the progressive disciplinary policy. The Board notes that Claimant's discharge memo did not refer to the attendance policy, but stated that Claimant was discharged for not attending the mandatory meeting after he had received his final warning. The Board also observes that Employer's witness testified that the two policies built on one another and that employees were notified of the interaction of the policies. The Board notes that, although Claimant's failure to attend the mandatory meeting was considered a minor offense under the progressive disciplinary policy, this incident occurred after Claimant had already received his final warning under the policy informing him that he would be terminated for any other future incidents.

Initially, we note that section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to willful misconduct connected to his work. 43 P.S. §802(e). Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003). When the discharge is based on a rule violation, the employer must prove the existence of the rule and the rule's violation. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). The employer must also establish that the claimant was aware of the work rule. *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). If the employer satisfies its burden, the burden shifts to the claimant to show

10

that he or she had good cause for the conduct. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

In general, constant, unexcused tardiness generally constitutes both a wanton and willful disregard of an employer's interests and a disregard of the standards of behavior that an employer is entitled to expect. However, where an employer has a policy regulating attendance that calls for a penalty less than discharge for a particular violation, a discharge for such violation will not result in a disqualification for willful misconduct. *See Gillespie v. Unemployment Compensation Board of Review*, 523 A.2d 1205, 1207 (Pa. Cmwlth. 1987) (holding that although unexcused absences ordinarily constitute willful misconduct, where an employer "erects a specific disciplinary policy which tolerates certain conduct . . . that conduct cannot be held to rise to the level of willful misconduct until the specified number of repetitions has been met," because "[u]nder such circumstances, the promulgation of such specific rules puts employees on notice that the employer will not consider such conduct to be adverse to its interest until the requisite number of violations has been committed"); *Unemployment Compensation Board of Review v. Schmid*, 341 A.2d 553, 555 (Pa. Cmwlth. 1975) (holding that the claimant's tardiness resulting in termination was not willful misconduct because the employer's policy advised that employees would be terminated after receiving three "two days off without pay" penalties, but the claimant had only received one "two days off without pay" penalty); *see also Cipriani v. Unemployment Compensation Board of Review*, 466 A.2d 1102, 1104 (Pa. Cmwlth. 1983) (holding that although habitual tardiness can constitute willful misconduct, "it is equally well settled that an employee may be constantly tardy and not guilty of willful misconduct where the tardiness was not in violation of shop rules and/or the employer's standards").

Here, the Board did not make any findings regarding Employer's attendance policy, the interaction between that policy and the progressive disciplinary

11

policy, or Claimant's accumulation of points under the attendance policy. Instead, the Board found that Claimant was terminated pursuant to the progressive disciplinary policy after previously receiving a final warning. (F.F. Nos. 2-3; Board decision at 2.)

Employer's attendance policy states that employees accumulate a certain number of attendance points for absences and tardiness; the most points an employee can accumulate for any one incident is 5 points; 5 points are subtracted from an employee's total on June 30 of each year; and employees are subject to termination after accumulating 20 points (C.R. at Item No. 10, Employer Ex. 1.) At the referee hearing, Claimant elicited undisputed testimony that, although Claimant did not have 5 points deducted from his points on June 30, he had accumulated at most 11 attendance points prior to missing the November 12 meeting. (N.T., 1/16/19, at 13-16.) Since the most number of points Claimant could have accumulated under the attendance policy for missing the November 12 meeting was 5, Claimant, at most, would have accumulated 16 points at the time of his termination. Because 16 points did not equal or exceed the total required for discharge under the attendance policy, *i.e.*, 20 points, Claimant's attendance, in and of itself, could not constitute willful misconduct. *See Gillespie*, 523 A.2d at 1208.

However, Employer presented evidence that the two policies "build on one another." (N.T., 1/16/19, at 13-16.) While Employer's witness, Kurtz, admitted that there was nothing in writing stating that the attendance policy was built into the progressive disciplinary policy, she also stated that an attendance policy issue could bump an employee up a level in the progressive disciplinary policy, the attendance policy was built into the progressive disciplinary policy, and employees were told that the attendance policy was built into the progressive disciplinary policy when it was introduced. *Id.* at 15-16. Kurtz further stated that missing the mandatory meeting was an offense under *both* the progressive disciplinary policy and attendance policy. *Id.* at 18.

Although the Board did not make any findings regarding Employer's attendance policy, Kurtz's testimony established that the two policies were interrelated and built on one another and that missing the mandatory meeting was an offense under both policies. Based on this testimony, we conclude there "is such relevant evidence which a reasonable mind would accept as adequate to support" the Board's finding that missing the mandatory meeting constituted an offense under the progressive disciplinary policy. *See Western & Southern Life Insurance Co.*, 913 A.2d at 335. Accordingly, because this finding is supported by substantial evidence, Claimant's contention that the Board erred in finding him ineligible for benefits even though he had not accumulated sufficient points under Employer's attendance policy is without merit.

We next turn to whether the Board erred by failing to examine the underlying incident that led to Claimant's final warning under Employer's progressive disciplinary policy. Claimant argues that without an examination of the incident that led to the final warning, Employer could not meet its burden of demonstrating that Claimant actually violated the progressive disciplinary policy. Claimant maintains that the Board may not rely on said policy to support a finding of willful misconduct without requiring Employer to prove that Claimant violated the policy.

Claimant also contends that there was significant conflict at the referee hearing over whether Claimant had committed an "extreme offense" under the progressive disciplinary policy. He argues that the Board capriciously disregarded competent evidence by refusing to resolve this dispute and ignoring overwhelming evidence that if Claimant did violate the policy, he did so with good cause. Although Employer asserted that Claimant refused to do an assigned job on September 7, 2018, Claimant notes that he testified he was not on call or scheduled to work the Saturday when the assignment was not completed and that his supervisor did not tell him he was required to work that day or would be disciplined if he did not do so. He also observes

13

that when he told his supervisor that he was unavailable on that day, his supervisor said it was okay and that he would figure something out. Claimant argues that Employer did not dispute this evidence. According to Claimant, the Board ignored his testimony and failed to make a finding regarding Claimant's credibility with respect to this incident. Additionally, Claimant asserts that even if his response could be construed as a refusal to comply with Employer's demand, he had good cause because he normally was not scheduled to work Saturday, the route in question was not his responsibility, and his supervisor did not tell him he had to work Saturday.

In contrast, the Board argues that it did not err in not examining the September 7, 2018 incident, because it was Claimant's failure to attend the mandatory meeting on November 12, 2018, rather than the September 7 incident, that led to Claimant's termination. The Board argues that the September 7, 2018 incident is irrelevant and that the only relevant inquiry is whether missing the mandatory meeting was willful misconduct. The Board observes that Claimant does not dispute that he forgot about the meeting and overslept or that he had good cause for his failure to attend it. In addition, the Board notes that one week prior to Claimant's termination he was told that he needed to be on time for all meetings over the next 60 days and that, if he did not improve, his employment would be in jeopardy. Accordingly, the Board maintains that Claimant engaged in willful misconduct by not attending the November 12, 2018 meeting.

It is well-established that "an employee's conduct cannot be considered willful misconduct for unemployment compensation purposes when the employer has not adhered to its own progressive disciplinary system in discharging the employee." *Frigm v. Unemployment Compensation Board of Review*, 642 A.2d 629, 634 (Pa. Cmwlth. 1994); *see also PMA Reinsurance Corp. v. Unemployment Compensation Board of Review*, 558 A.2d 623, 625-26 (Pa. Cmwlth. 1989) (holding that because the employer failed to follow its progressive disciplinary policy in discharging the

14

claimant, it also failed to establish the discharge was for willful misconduct); *Brady v. Unemployment Compensation Board of Review*, 544 A.2d 1085, 1088 (Pa. Cmwlth. 1988) (concluding the claimant did not commit willful misconduct where employer did not follow its progressive disciplinary policy in terminating the claimant); *Looney v. Unemployment Compensation Board of Review*, 529 A.2d 612, 614 (Pa. Cmwlth. 1987) (concluding that "[w]here an employer has established a specific rule applicable to all employees, it must follow its own progressive discipline policy when disciplining specific employees").

However, it is also true that "[a] conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in such cases where . . . the employee has been warned and/or reprimanded for prior similar conduct." *Department of Transportation v. Unemployment Compensation Board of Review*, 479 A.2d 57, 58 (Pa. Cmwlth. 1984) (holding that where claimant was warned about his attendance record and that his employment would be jeopardized by future violations, claimant committed willful misconduct when he subsequently overslept and missed work). Likewise, where an employee is told that his job is in jeopardy and that future violations of a work rule will result in immediate discharge, the employee commits willful misconduct where he subsequently violates the same work rule. *Blefko v. Unemployment Compensation Board of Review*, 400 A.2d 916, 917 (Pa. Cmwlth. 1979) (holding that claimant engaged in willful misconduct where the employer warned him that if he was late again he would be discharged, but shortly thereafter, the claimant was late because he overslept).

It does not appear that this Court has ever determined in what circumstances the employer's establishment of a progressive disciplinary system requires it to prove that earlier disciplinary events, which were committed before and formed the basis for the final terminating event, actually occurred. In *Gillespie*, where the employee had a progressive disciplinary policy for absences, we vacated a Board's

15

determination that a claimant had committed willful misconduct, because the Board had not made factual findings regarding the claimant's reasons for her *multiple absences*. 523 A.2d at 1208. Because the claimant was terminated after a series of absences pursuant to a progressive disciplinary system, we concluded the Board needed to make factual findings on the claimant's justifications for *each* of the absences in order to determine whether the claimant had committed willful misconduct or had good cause for the absences. *Id.* Thus, we held that both the final absence and earlier absences were relevant to the Board's inquiry.

Similarly, in *Cipriani* the Claimant was terminated after allegedly being tardy on *25 separate occasions* during his last 8 weeks of work. 466 A.2d at 1104. While the employer warned the claimant repeatedly, the employer also introduced evidence that an employee was not considered tardy if he arrived less than four minutes late. *Id.* at 1104. Since the Board did not make factual findings regarding whether the claimant had arrived less than 4 minutes late for any of the 25 incidents, which would have affected whether the claimant was actually considered tardy under the employer's policy on those dates, we remanded to the Board to make more explicit findings. *Id.*

Further, in *Patterson v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1741 C.D. 2007, filed September 12, 2008),[3] the claimant received a final warning pursuant to a progressive disciplinary policy after allegedly failing to clean a hospital corridor. *Id.*, slip op. at 2. He was terminated two weeks later after failing to clean a holding area in the hospital. *Id.* Because the Board found that the claimant had good cause for not cleaning the corridor in the first incident, we held that the claimant's failure to clean the holding area in the second incident was not willful misconduct. *Id.*, slip op. at 7.

---

[3] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

Here, under Employer's progressive disciplinary policy, certain offenses, including "[r]efusal to do an assigned job," are considered "extreme offenses." (N.T., 1/16/19, Employer Ex. 2.) Extreme offenses result in either a five-day unpaid suspension or immediate termination. *Id.* The policy also delineates certain "minor offenses" and if an employee commits five such offenses his employment is terminated. *Id.*

Employer's witnesses testified that Claimant's decision to not work his assigned route on September 7, 2018, was a "refusal of work" and "extreme offense" under the progressive disciplinary policy. (N.T., 1/16/19, at 11, 20.) After the September 7, 2018 "extreme offense" incident, Claimant received a five-day suspension and a final written warning advising him that any future incidents would result in termination. *Id.* at 11-12. Although Claimant signed the final warning, he crossed out the word "agree" where it asked him whether he agreed with the final infraction. *Id.* at 24; C.R. at Item No. 2. After Claimant missed the mandatory meeting on November 12, 2018, his employment was terminated. (N.T., 1/16/19, at 12.) Employer's witness, Kurtz, testified that missing the November 12 meeting was considered a "minor offense" under the progressive disciplinary policy because it was an example of "failing to follow practices as needed for the specific job assignment." *Id.* at 18. Claimant's termination letter stated that he was discharged after "previously receiving [his] last and final warning." (C.R. at Item No. 2.)

Because missing the meeting was only considered a minor offense, that incident, in and of itself, was insufficient under the progressive disciplinary policy to result in Claimant's termination. The Board concluded that whether Claimant committed the extreme offense on September 7 was irrelevant because he was warned after that event that any future incidents would result in termination. Thus, the Board did not make any factual findings or credibility determinations regarding the September

17

7 incident. However, but for the alleged "extreme offense" that occurred on September 7, Claimant would not have been terminated pursuant to the disciplinary policy.

With regard to the September 7 incident, Claimant's supervisor, Shenk, stated that he asked Claimant to work on Saturday, September 8, 2018, because Claimant had not completed a previously assigned route, but that Claimant "said he wasn't coming in Saturday." (N.T., 1/16/19, at 19.) Shenk testified that Claimant, as a flex driver, was on call some weekends, but admitted that Claimant was not on call or scheduled to work the Saturday in question. *Id.* at 20. He explained that he asked Claimant to work on Saturday because Claimant had not finished the work that was assigned to him for Friday, September 7, and that when an employee does not finish the work assigned to him, it is his responsibility to finish his work the next day, even if that falls on the weekend. *Id.* On cross-examination, Shenk acknowledged that Claimant had completed the route that was initially assigned to him for September 7, but that Claimant was assigned another employee's route after that employee went home sick. *Id.* at 20-21. He conceded that the other employee had not properly prepared the equipment on the truck that Claimant was assigned to drive, which prevented Claimant from completing the additional assignment on Friday, but blamed Claimant for not checking to see what equipment was in the truck prior to beginning the trip. *Id.*

Conversely, Claimant testified that the route assigned to him on September 7 was not his normal assigned route and that he was unable to complete that route because the previous driver did not adequately prepare the truck. *Id.* at 21. Although he tried to fix the equipment on the truck, he was unable to do so, which required him to return to Employer's home base without completing the route. *Id.* at 22. Claimant stated that when he returned to the home base, Shenk asked him to finish the route on Saturday, but he told Shenk that he was unavailable. *Id.* at 22. He testified that, in response, Shenk told him "okay, we'll figure it out," and did not say that

Claimant was required to work on Saturday or that he would be disciplined if he did not do so. *Id.* Claimant explained that when Shenk told him that they would figure something out he presumed that Shenk was being helpful and that an on-call employee would complete the assigned route on Saturday. *Id.* at 23. Finally, Claimant stated that he would have worked on Saturday if Shenk had told him he would be disciplined for not showing up. *Id.* at 24. Employer did not provide any testimony to rebut Claimant's testimony regarding his reasons for not working Saturday.

It is undisputed that Claimant missed the mandatory meeting without justification on November 12, 2018. Yet, without additional factual findings and credibility determinations regarding whether Claimant committed an "extreme offense" on September 7, this Court is unable to determine whether Employer followed its progressive disciplinary policy and, thus, whether Employer met its burden of establishing that Claimant committed willful misconduct. In particular, the conflicting testimony regarding the September 7 incident, in conjunction with the fact that Claimant challenged the final warning at the time he received it, create questions of fact that preclude us from deciding whether the Board met its burden of proof.

The Board contends that whether Claimant committed the extreme offense is irrelevant since he received a final warning after the September 7, 2018 incident.[4] However, because Claimant would not have received the final warning but for that incident, it is highly relevant to the question of whether Employer followed its progressive disciplinary policy. In other words, because missing the mandatory

---

[4] The Board also argues that, in addition to the final warning, Claimant was notified by written memorandum one week before the mandatory meeting, on November 5, 2018, that he needed to improve his dependability, be on time for all meetings for the next 60 days, and if he did not improve his employment would be in jeopardy. *See* C.R. at Item No. 2. However, at the referee meeting, Kurtz acknowledged that this memorandum was only a quarterly review and not a disciplinary action or a "step of the progressive disciplinary process." (N.T., 1/16/19, at 12.) Because the November 5, 2018 memorandum was a quarterly review and not issued pursuant to Employer's progressive disciplinary policy, it is not relevant to whether Employer followed said policy in terminating Claimant.

19

meeting was only a minor offense that would not have resulted in termination by itself, whether Claimant committed an extreme offense on September 7 is relevant to whether Claimant committed willful misconduct. Therefore, like *Gillespie*, *Cipriani*, and *Patterson*, where we held that an examination of events preceding the final terminating event was necessary in order to determine whether the claimants had engaged in willful misconduct, here, the Board should have made factual determinations regarding the September 7 incident.

Accordingly, we vacate the Board's decision and order and remand to the Board to make credibility determinations and factual findings with respect to whether Claimant refused work on September 7, 2018, and/or had good cause to do so, and to issue new conclusions of law based on such additional findings.[5]

_____
PATRICIA A. McCULLOUGH, Judge

---

[5] Because both Employer and Claimant already presented testimony regarding the September 7, 2018 incident, the Board is not required to hold an additional hearing on remand; rather, the Board may issue additional findings of fact based on the evidence already in the record.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Zimmerman,                 :
             Petitioner      :
                           : No. 649 C.D. 2019
          v.              :
                           :
Unemployment Compensation   :
Board of Review,            :
             Respondent    :

## ***ORDER***

AND NOW, this 23rd day of July, 2020, the May 1, 2019 order of the Unemployment Compensation Board of Review (Board) is vacated. The matter is remanded to the Board for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

                              _____
                              PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Zimmerman,              :
                             :
              Petitioner      :
                             :
       v.                    : No. 649 C.D. 2019
                             : Argued:  May 14, 2020
Unemployment Compensation     :
Board of Review,              :
                             :
              Respondent      :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLECHRISTINE FIZZANO CANNON, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                              FILED:  July 23, 2020


         Respectfully, I dissent.  The Unemployment Compensation Board of
Review (Board) held that Scott Zimmerman (Claimant) was ineligible for benefits
under Section 402(e) of the Unemployment Compensation Law (Law)[1] after finding
that he was discharged by Walters Services Inc. (Employer) for missing a mandatory
meeting without good cause.  Board's Findings of Fact Nos. 4-6.  Approximately
two months earlier, Claimant received a written warning advising him that any future

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended* 43 P.S.
§802(e).
**(Footnote continued on next page…)**

incident of misconduct would result in his automatic discharge. Board's Finding of Fact No. 3. Claimant disagreed with the basis of Employer's final warning.[2] However, Claimant acknowledged that he understood its terms. The Board rejected Claimant's contention that Employer did not follow its progressive disciplinary policy when it discharged him, explaining that Employer provided Claimant with the "requisite notice that any future infraction would be grounds for termination" of his employment. Board's decision at 2. As discussed below, the Board's analysis is consistent with our case law, and I would affirm the Board's order.

Willful Misconduct

Section 402(e) of the Law renders ineligible for benefits persons who are unemployed due to work-related willful misconduct. 43 P.S. §802(e). The Law does not define willful misconduct, but Pennsylvania courts have defined it as including a wanton and willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that an employer can rightfully expect from an employee, and negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003).

---

[2] Employer alleged that Claimant refused to do an assigned job. In relevant part, Employer's policy (Employer's Ex. E-2) states:

> **Group 3 - Extreme Offenses Disciplinary Process**: 1st Offense:
> Five-day unpaid suspension & mandatory EAP (Employee
> Assistance Program) Sessions or Immediate Termination

The Board found that Employer's policy considers such refusal to be an extreme offense, warranting a five-day unpaid suspension, Finding of Fact No. 2, but it did not consider whether the suspension was warranted in Claimant's case.

MHW - 2

Where an employer has a policy identifying conduct that will result in employee discipline, including discharge, the employer has defined these offenses as willful misconduct for purposes of Section 402(e). *Brady v. Unemployment Compensation Board of Review*, 544 A.2d 1085, 1086 (Pa. Cmwlth. 1988). An employee cannot be found to have committed willful misconduct where the employer's policy did not warn that such behavior could result in a dismissal. *PMA Reinsurance Corporation v. Unemployment Compensation Board of Review*, 558 A.2d 623, 626 (Pa. Cmwlth. 1989). Additionally, where an employer's policy provides for progressive discipline, the employer has identified the *process* the employer will follow in response to employees' misconduct. *Id.* at 625-26. Once an employer identifies the process that will lead to discharge, the employer's failure to follow the *steps* outlined in its progressive disciplinary policy will preclude a denial of benefits due to willful misconduct. *Id.*

Stated otherwise, an employer's progressive disciplinary policy informs employees whether and when specified conduct will result in termination of employment. Accordingly, a determination as to whether an employer followed its progressive disciplinary policy involves a two-part inquiry.

The first examines the policy's treatment of the conduct. While an employer can discharge an employee for any reason, if the employer's disciplinary policy provides that certain conduct will result in lesser discipline, discharge for that conduct will not be grounds for disqualification under Section 402(e). *Gillespie v. Unemployment Compensation Board of Review*, 523 A.2d 1205, 1207 (Pa. Cmwlth. 1987). Where an employer's policy provides for discharge after a specific number of violations, each incident may be examined to determine whether the requisite number of violations is established. *Id.*

The second inquiry involves the *process* identified by the employer's policy. When an employer's progressive disciplinary policy sets forth specific disciplinary steps that will precede a discharge, the employer's failure to follow the steps of its disciplinary system will preclude a disqualification of benefits under Section 402(e). *See PMA* (the employer followed only two of the four steps outlined in its progressive policy); *Unemployment Compensation Board of Review v. Schmid*, 341 A.2d 553, 555 (Pa. Cmwlth. 1975) (the claimant had received only one "two days off without pay" penalty and the policy provided for discharge after three).

This Court's decisions addressing whether an employer has followed its progressive disciplinary policy reflect the Court's focus on whether the claimant in question had received the requisite notice under the employer's policy. *See, e.g.*, *PMA*, 558 A.2d at 626 ("the promulgation of specific rules puts employees on notice that the employer will not consider such conduct to be adverse to its interest until the requisite . . . [violation] has been committed") (quoting *Gillespie*, 523 A.2d at 1207); *Brady*, 544 A.2d at 1086 ("An employer may notify its employees of its interests and the standards of behavior it expects by promulgating rules. By doing so, it indicates what it would consider to be willful misconduct.").

These decisions illustrate the Court's consistent emphasis on whether the claimant had notice that his conduct would not be tolerated and notice of the specific consequences that would ensue. The same reasoning and analysis apply in circumstances where the employer has tolerated the alleged misconduct. Because, effectively, the employer has communicated that such behavior will *not* result in discharge, the courts will not find that a claimant was terminated for willful misconduct. *PMA*, 558 A.2d at 626; *Gillespie*, 523 A.2d at 1207.

Underlying all of these decisions is the purpose of the Law, which is to provide economic security to persons who are unemployed through no fault of their own. Section 3 of the Law, 43 P.S. §752. An employee will not be "at fault" under the Law where he is discharged for behavior that, by the employer's definition, will lead to lesser discipline, or behavior that the employer has condoned in the past.

Claimant's Discharge

An analysis of willful misconduct begins with the reason for the claimant's discharge. If the alleged misconduct is a violation of an employer's disciplinary policy and is defined by the number of instances, such as an accumulated total of absences, each incident is relevant to the Court's inquiry. In contrast, where, as here, the alleged violation is for a discrete and enumerated policy violation, the inquiry is whether the employer followed the steps outlined in its policy, i.e., whether the claimant had notice that the infraction would lead to his discharge.

Claimant argues that the Board erred in concluding he was ineligible for benefits when Employer discharged him for an absence and Employer's attendance policy called for a lesser penalty. Majority, slip op. at 8. This argument is belied by the record. Contrary to Claimant's suggested version of the facts, the Board found that Claimant was discharged for missing a mandatory meeting. Finding of Fact No. 6. This finding is supported by substantial evidence, and it is binding upon this Court. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999).

Significantly, the Board *did not* characterize Claimant's missing the mandatory meeting as an attendance violation, but, rather, as a refusal to follow Employer's directive.[3]  The Board explained:

> In the present case, [Employer] discharged [Claimant] for missing a mandatory meeting.  The Pennsylvania Courts have held that where an employee is discharged for refusing or failing to follow an employer's directive, both the reasonableness of the demand and the reasonableness of the employee's refusal must be examined.  Where the action of the employee is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct.
>
> Here, [Claimant] was aware of the fact that there was to be a meeting on November 12, 2018. [Claimant] testified that he did not know that it was mandatory.  However, he also indicated that he had forgotten about it and overslept.  Therefore, his testimony that he was unaware of the mandatory directive is discredited.  [Claimant] does not contest that he failed to attend the meeting.  Therefore [Employer] met its burden to prove willful misconduct, and it is incumbent on [Claimant] to prove good cause.
>
> [Claimant] did not prove good cause for his actions.  As addressed, his testimony regarding his knowledge of the directive is not credible.  [Claimant] only contends that [Employer] failed to follow its progressive disciplinary policy.  Yet, this argument fails.  [Employer] provided credible evidence that it issued [Claimant] a final warning on September 10, 2018, for an "extreme offense."  The Board need not examine the underlying offense [that] gave rise to the final warning[,] only whether [Claimant] had requisite notice that he could be discharged.  It is clear that the warning advised [Claimant] that any future action will lead to automatic termination.  Regardless of the fact that [Employer] maintained a separate attendance point

---

[3] Teresa Kurtz stated that missing the mandatory meeting constituted the offense of "failing to follow practices as needed for the specific job assignment" under Employer's progressive disciplinary policy.  Notes of Testimony 1/16/2019 (N.T.) at 18.

system, [Claimant] had requisite notice that *any* future infraction will be grounds for termination. Consequently, [Claimant] is ineligible under Section 402(e) of the Law.

Board's decision at 2 (emphasis in original).

Analysis

The Majority acknowledges the Board's findings of fact and its reasoning. However, instead of reviewing the Board's decision for substantial evidence and error of law, the Majority devotes its attention to evidence that was not cited by the Board to support its decision. Majority, slip op. at 17-20. The Majority's analysis represents a detour from the reasoning consistently applied by this Court to determine whether an employer's failure to follow a progressive disciplinary policy precludes a determination of willful misconduct. Specifically, the Majority overlooks the fundamental factor the Court considers in these cases, which is the notice provided by the employer's policy. *See Macurak v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1923 C.D. 2008, filed August 19, 2009).[4, 5]

Additionally, the Majority conflates policy violations that are based on the quantity of the offenses with violations based on the nature of offenses. Here, as

---

[4] In *Macurak*, we rejected the claimant's argument that the employer had the burden of proving each *prior* incidence of misconduct as unsupported by any precedent. "Additionally, cases from this Court dealing with the issue of whether an employer has followed its progressive disciplinary policy have concentrated on whether the claimant in question had received the requisite warnings under the employer's policy." *Id.*, slip op. at 18.

[5] Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).
**(Footnote continued on next page…)**

MHW - 7

found by the Board, Claimant was discharged for a specific incident, not for an accumulation of offenses.[6]

Contesting the final warning, Claimant asserts that he did not violate Employer's policy when he did not return to work on Saturday to complete his coworker's route. Employer's witness, Cody Shenk, offered contrary testimony. It is undisputed, however, that in accord with its progressive disciplinary policy, Employer could have discharged Claimant for that single infraction, considered an "extreme offense," alone. Employer's Ex. 2. *It did not*. Instead, Employer opted to impose a five-day unpaid suspension and mandatory participation in Employee Assistance Program sessions. Additionally, Employer issued a letter dated September 10, 2018, which outlined Claimant's history of absences; identified the September 7, 2018 incident as an extreme offense under Employer's progressive disciplinary policy; and notified Claimant that any subsequent infraction would result in the automatic termination of his employment. Thus, while Claimant may have disagreed with the basis for his penultimate discipline, his signature confirmed his receipt of the warning and acknowledged his understanding that any additional

---

[6] I agree with the Majority that the testimony of Ms. Kurtz is sufficient to establish that Employer's policies build on one another. In fact, Employer's written progressive disciplinary policy, which was signed by Claimant, expressly states:

> **\*\*\*Please note:** This disciplinary process builds – if you have a verbal warning in any of the groups and have another disciplinary action in another group, it automatically goes up to the next offense. Examples include, verbal goes to a written, written goes to an unpaid suspension, etc. Human Resources will be involved in anything above a verbal warning.

Employer's Ex. 2 (emphasis in original). Unfortunately, Ms. Kurtz was not aware that Employer's written policy contained that provision.

infraction would result in the automatic termination of his employment. Record Item 2.

Because Claimant was not discharged for failing to complete his route on September 7, 2018, but rather, for failing to attend a meeting on November 12, 2018, the present case is indistinguishable from any number of cases involving final warnings and last chance agreements. The Majority reasons that, but for the alleged prior infraction, Claimant would not have received the final warning. The flaw in the Majority's "but for" analysis is that every progressive disciplinary policy includes a next-to-last step. The Majority's holding would require any employer that discharges an employee after issuing a final warning or imposing other prior discipline to prove the prior misconduct, no matter how remote in time or character from the actual reason for the employee's discharge.

Notably, because Employer's policy allowed Employer the discretion to terminate Claimant for an extreme offense, and Employer instead opted to give Claimant another chance, Employer could not rely on the alleged prior policy infraction to disqualify Claimant for benefits when it discharged him two months later. *Tundel v. Unemployment Compensation Board of Review*, 404 A.2d 434, 436 (Pa. Cmwlth. 1979) ("An incident of willful misconduct cannot be temporally remote from the ultimate dismissal and still be the basis for a denial of benefits."). It makes no sense that Employer should have to prove the same prior misconduct when it terminated Claimant's employment for missing a mandatory meeting. Nevertheless, under the Majority's analysis, an employer with a progressive disciplinary policy must prove a minimum of two policy violations in order to establish willful misconduct.

The cases cited by the Majority do not support its conclusion. Again, the Board found that Claimant was discharged for a discrete incident. Consequently, the facts in *Gillespie* (multiple absences) and *Cipriani v. Unemployment Compensation Board of Review*, 466 A.2d 1102 (Pa. Cmwlth. 1983) (habitual tardiness) are inapposite, and the Majority's reliance on them is misplaced.

Additionally, the Majority misapprehends our decision in *Patterson v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1741 C.D. 2007, filed September 12, 2008). In *Patterson*, the Court considered whether the employer satisfied "its burden of demonstrating willful misconduct where it offered no evidence that the claimant's unsatisfactory work performance was willful." *Id.*, slip op. at 1. We held that the employer did not meet its burden of proof under Section 402(e), explaining, "Pursuant to the Board's own findings, the Court cannot conclude as a matter of law that [the claimant's] conduct reflects an intentional or conscious disregard of [the employer's] interests." *Id.*, slip op. at 7. Although the claimant in *Patterson* had previously been warned about his work performance, the Court did not focus on the employer's progressive disciplinary policy.

Consequently, I submit that neither these cases, nor our collected decisions, support the Majority's holding.

In sum, where an employer has a progressive discipline policy, the employer has identified the conduct that it considers adverse to its interests and the disciplinary process that will be followed. In such circumstances, a determination of eligibility under Section 402(e) requires a two-fold inquiry: (1) whether the employee's conduct falls within the conduct prohibited, and (2) whether the employer's discipline is consistent with the steps outlined in its policy. Here, the Board conducted that inquiry. Claimant challenges the Board's conclusion that in

discharging him for missing the meeting, Employer failed to follow its progressive disciplinary policy. Because Employer *identified the conduct* for which Claimant could be discharged and *followed the steps* outlined in its policy, this argument necessarily fails.

Conclusion

Consistent with the options identified in its progressive disciplinary policy, Employer imposed a five-day unpaid suspension for Claimant's refusal of an assignment and issued a final warning. That Claimant disagreed with the basis for the final warning is of no moment, because *Claimant was not discharged for an accumulation of violations*. Rather, as the Board specifically found, Claimant was discharged for missing a mandatory meeting. Claimant was expressly warned that any future violation of Employer's policies would result in the automatic termination of his employment. At that point, Claimant's position was not unique, but was the same as that of numerous employees whose employment was subject to a progressive disciplinary policy and whose discharges followed a final warning or last chance agreement. *See, e.g.*, *Washington Health System v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 886 C.D. 2019, filed May 11, 2020) (the claimant's discharge for a positive drug test was automatic where the employer had issued a final written warning for a prior unrelated infraction); *Guthrie*, 738 A.2d at 522 (the employer proved the existence of its work rule pursuant to a last chance agreement).

Finally, this Court has repeatedly held that the violation of a last chance agreement is willful misconduct. *See, e.g.*, *Walton v. Unemployment Compensation Board of Review*, 797 A.2d 437, 438 (Pa. Cmwlth. 2002) (holding that the claimant's

failure to abide by a last chance agreement prohibiting the use of illegal drugs was willful misconduct); *Guthrie*, 738 A.2d at 522 (holding that the claimant's violation of a last chance agreement satisfied the employer's burden of proving willful misconduct). *See also Gordon Terminal Service Co. v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2086 C.D. 2014, filed July 7, 2015) (holding that the claimant was ineligible for benefits due to willful misconduct, where the claimant was put on a last chance agreement for tardiness and absenteeism and continued such behavior); *Hartman v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1089 C.D. 2011, filed April 5, 2012) (holding that the claimant's violation of a last chance agreement by failing to adhere to the employer's standards of conduct constituted willful misconduct).

For all of the foregoing reasons, I would affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge